## STATE *v.* RICHARD SCOTT.

Declarations are called "dying declarations" when made under a consciousness of impending death.

It is not necessary that the declarant should express in direct terms a sense of approaching dissolution; his bodily condition, his appearance, conduct and language, as well as the statements made to him by physicians and other attendants, may be considered and a conclusion deduced therefrom, as to the state of his consciousness at the time.

In a charge of murder, before the jury can convict the defendant, they must believe from the evidence that the deceased died of the wounds inflicted by the accused and *from no other cause.* If he did, the facts that he had no surgeon, or an unskillful one, or a nurse whose ill appliances may have aggravated the original wound, cannot mitigate the crime of the person whose malice caused the death.

To do that, it must plainly appear that the death was caused, not by the wound, but only by the misconduct, malpractice or ill treatment on the part of other persons than the accused.

APPEAL from the First District Court of New Orleans, *Robertson,* J.

*E. W. Moïse,* Attorney General, for the State. *A. P. Field,* for defendant and appellant.

SPOFFORD, J. The defendant has appealed from a judgment sentencing him to hard labor in the penitentiary for life, he having been again convicted of the crime of murder. See the former case reported in 11 An., p. 429.

Two bills of exceptions only are to be considered:

I. The witness *Mary O'Rourke* was admitted, against the objection of counsel, to prove the dying declarations of the victim of the homicide charged in the indictment. Declarations are called "dying declarations" when made under a consciousness of impending death. In this case the Judge might well have inferred that the declarations of the deceased were made at a time when she knew death was imminent, from the state of facts conceded by the bill of exception. It is not necessary that the declarant should express in direct terms a sense of approaching dissolution; his bodily condition, his appearance, conduct and language, as well as the statements made to him by physicians and other attendants, may be considered and a conclusion deduced therefrom, as to the state of his consciousness at the time. We do not find that the Judge committed an error in inferring from the admitted facts, that the declarations in question were dying declarations, and admissible as such. See 1 Greenleaf Ev. § 158.

II. The other bill was taken both to the refusal of the Judge to give a certain instruction to the jury, and to some of the instructions actually given. The prisoner's counsel desired the court to charge the jury, that "if the wound inflicted was not necessarily mortal, but by ill treatment became so, they will find the defendant not guilty." The refusal of the Judge to give this charge was not an error. He had just charged "that before the jury can convict the defendant, they must believe from the evidence that the deceased died of the

wounds inflicted by the defendant, *and from no other cause.*" It is sometimes impossible to procure skillful surgical aid. If a person dies from a wound inflicted with a murderous intent, whose life might have been saved by the skill of a surgeon whom it was impossible to procure, the crime is none the less murder. The true point is, did the party die of the wounds inflicted by the accused? If he did, the facts that he had no surgeon, or an unskillful one, or a nurse whose ill appliances may have aggravated the original hurt, cannot mitigate the crime of the person whose malice caused the death. To do that, it must plainly appear that the death was caused, not by the wound, but only by misconduct, mal-practice or ill treatment on the part of other persons than the accused.

We do not think the instructions given to the jury, all taken together, are inconsistent with this exposition of the law, which we regard as correct and supported by the best authorities. 1 Hall's P. C.* 428 ; Wharton's Law of Homicide, 241 ; 1 Russel, 505. The doctrine upon this subjected is thus digested by Greenleaf, (Evidence, vol. 3, § 139,) with his usual accuracy and clearness : "If death ensues from a *wound* given in malice, *but not in its nature mortal*, but which being neglected or mismanaged, the party died ; this will not excuse the prisoner who gave it, but he will be held guilty of the murder, *unless he can make it clearly and certainly appear* that the mal-treatment of the wound, or the medicines administered to the patient, or his own misconduct, and not the wound itself, was the sole cause of his death : for if the wound had not been given, the party had not died. So, if the deceased were ill of a disease apparently mortal, and his death were hastened by injuries maliciously inflicted by the prisoner, this proof will support an indictment against him for murder ; for an offender shall not apportion his own wrong."

Judgment affirmed.