190 So. 325

**STATE v. McKEE et al.**

No. 35099.

May 29, 1939.

Rehearing Denied June 26, 1939.

Thomas V. Craven, Edmund G. Burke, Matthew S. Braniff, and Beuker F. Amann, all of New Orleans, for appellants.

Gaston L. Porterie, Atty. Gen., James O'Connor, Asst. Atty. Gen., and Charles A. Byrne, Dist. Atty., Conrad Meyer, Jr., 1st Asst. Dist. Atty., and Albert B. Granzin, Jr., Asst. Dist. Atty., all of New Orleans, for the State.

HIGGINS, Justice.

Robert McKee (alias Bobbie Horn) and Eugene Ricker, defendants and appellants, with Frank Savoca, Sam Mason, Joseph Vaccaro and Henry Riehm, were jointly indicted and charged with the murder of James Douglas Acomb on October 3, 1927, between 9 and 11 o'clock in the morning.

The State requested and was granted a severance and the defendants (appellants) were jointly tried, the jury returning a verdict of "guilty without capital punishment" against Robert McKee (alias Bobbie Horn) and "guilty as charged" against Eugene Ricker. The former was sentenced to the State Penitentiary at hard labor during the remainder of his natural life and the latter was condemned to be hanged on a date to be fixed by the Governor of the State.

The defendants have appealed from the verdicts of the jury and the sentences of the Court. They rely upon five bills of exception in asking for the annulments of the verdicts of the jury and the judgments of the Court.

In order that the issues presented by the exceptions may be better understood, a brief statement of the facts is necessary.

On the date and at the time alleged in the indictment, James D. Acomb, the cashier and paymaster for the Daily States, a newspaper corporation with its

place of business located on the uptown river corner of Camp and St. Joseph Streets, this City, in accordance with his usual custom, left the building with a black leather satchel and was driven in an automobile by Burrell Townsend, a colored chauffeur, to the Bank where he received $5,500 cash, which was to be used in paying the employees of the Company. At the time of his return there was a light rain falling and as he stepped out of the car on to the sidewalk with the satchel containing the money in his hand, a young man, without any word of warning, thrust a pistol at him and grabbed the satchel and after obtaining possession of it and while Acomb's arms were lifted, shot him in the right side, inflicting a wound which caused his death two days later in the hospital.

Shortly after the robbery, the police arrested Henry Riehm and Robert McKee (alias Bobbie Horn), together with other suspects, all of whom were released for want of sufficient evidence and identification of either one of them as the party who robbed and shot the deceased. Later, the State charged Alex Morgante with the offense in question, but he was also released on a preliminary hearing because of the failure of identification and the lack of evidence. ·

On April 30, 1937, almost ten years after the commission of the crime, the parties named in the indictment were indicted by the Grand Jury for the murder of Acomb, as a result of the evidence produced through the continued efforts of the police.

At the time of the trial on March 14, 1938, Frank Savoca was dead and Sam Mason and Joseph Vaccaro were confined to the Louisiana State Penitentiary for a crime committed by them subsequent to the offense in question and they, together with Henry Riehm, who was used as a witness for the State, were not tried, the State having been granted its motion for a severance.

Burrell Townsend, the colored chauffeur, and Mrs. Elsa Lea, a white woman who was a music teacher and who was standing at the entrance of the newspaper office about three feet from where the shooting occurred, identified Eugene Ricker as the bandit and killer.

Henry Riehm, who was formerly employed in selling newspapers for the Daily States and who was familiar with the Company's practice in handling its payroll, testified that at the suggestion of Robert McKee (alias Bobbie Horn) he and Eugene Ricker entered into an agreement to rob Acomb. In accordance with their plan, on the morning in question, the three stationed themselves on the streets near the Daily States Building and when Acomb left the building, Riehm tipped his cap to them as a signal to identify Acomb as the cashier of the Company. McKee (alias Horn) then moved away from the scene and Ricker was to take a position so as to intercept Acomb upon his return to the Company from the Bank. Riehm, according to instructions, immediately left and went to the home of a relative to be with his minor son so as to have evidence of an alibi, in the event he were arrested. He

and McKee (alias Horn) were arrested that night and held in jail for several days, but having vigorously protested their innocence, they were released because of insufficient evidence. The witness stated that he received in various sums and at different dates $375 from McKee (alias Horn) and that he and McKee (alias Horn) jointly purchased an automobile for $150, which was sold in November, 1927, for $125 and the proceeds of the sale divided between them. He described how he and McKee (alias Horn) spent the money "having a good time and gambling," and admitted that he had been arrested a number of times for various offenses previous to this trouble.

The State corroborated his evidence by the testimony of the seller and the purchaser of the automobile and supported the colored chauffeur's testimony with character evidence given by reputable and outstanding white men.

The defense of McKee (alias Horn) was an alibi, his mother and sister testifying that he was home at the time of the robbery. In behalf of both McKee (alias Horn) and Ricker, testimony was offered tending to show that the State's witnesses had contradicted themselves and the two eye-witnesses to the tragedy were uncertain as to the description and identity of the killer.

Two witnesses testified, in behalf of Ricker, that they were in the immediate vicinity of the scene of the hold-up and that he was not the man who robbed and shot Acomb. The State sought to contradict these witnesses by the testimony they had given in the trial of Alex Morgante, who was released, on a preliminary hearing, from the charge that he was the one who had killed the deceased. In this hearing, Burrell Townsend and Mrs. Elsa Lea, the two witnesses for the State, who identified Ricker as the bandit and killer, would not identify Morgante.

■ The first bill of exception was reserved to the district judge overruling the defendants' objection and permitting the district attorney to propound the following questions to Burrell Townsend, the witness for the State:

"Q. Now Burrell, do you know * * * this man Horn? A. I have seen him, yes, sir; yes, sir, I have seen Mr. Horn.

"Q. Where did you see him? A. I saw him lots of times around Poydras; I saw him lots of times around St. Joseph and Camp.

"Q. Did you see him on the day of the killing? A. No, sir.

"Q. Did you see him at any time before the date of the killing? A. Yes, sir, I have seen him before the date of the killing, but I didn't see him the day of the killing.

"Q. How long before the date of the shooting did you see him? A. Oh, say probably 15 or 16 days.

"Mr. Craven: I object, if your Honor please, how many times he saw Horn or how many times he didn't see Horn; it is not connected with the case.

\* \* \* \* \* \*

"The Court: The Court believes that, in line with the State's case, an attempt to prove conspiracy, in support of their charge of conspiracy, the evidence is admissible."

It is contended that this evidence was inadmissible and prejudicial because of the presupposed existence of the conspiracy not yet attempted to be proved.

In the case of State v. Gunter et al., 180 La. 145, 156 So. 203, it was held that an indictment charges a conspiracy when the crime committed is alleged to be the joint act of two or more persons, and that evidence of the acts and declarations of the conspirators in furtherance of the conspiracy was admissible. State v. Gebbia et al., 121 La. 1083, page 1084, 47 So. 32; State v. Dundas, 168 La. 95–97, 121 So. 586.

The State in the instant case charges that Acomb was killed and murdered by the joint acts of the accused.

The evidence was admissible and was offered also for the purpose of showing preparation on the part of the defendants and appellants for the commission of the crime charged. The testimony tending to show that McKee (alias Horn) was near the scene of the robbery and murder some fifteen days prior to its actual perpetration was not too remote, especially in view of the testimony of Riehm to the effect that the robbery was to have been carried out one week prior to the date it was committed, but on account of the presence of the police officers in the vicinity, their plans had to be abandoned until a week later.

In the case of State v. Johnson et al., 167 La. 986, 120 So. 620, it was held that evidence of preparation for the commission of a crime by repairing to the scene thereof and doing anything to promote the contemplated crime is admissible for the prosecution, and evidence to explain it away is always admissible for the defense. See also State v. Bankston et al., 165 La. 1082, 1083, 116 So. 565; Wharton's Criminal Evidence, 10th Ed., Vol. 2, Sec. 753, 499; Wigmore on Evidence, 2d Ed., Vol. 1, Sec. 238, p. 495.

As this testimony was for the purpose of showing conspiracy to commit a felony and preparation to carry the same out, it was admissible and the ruling of the trial court was proper and therefore the bill of exception is overruled.

■ The second bill of exception was reserved by the defendants to the ruling of the Court in allowing Frank Vignes to testify as a witness for the State, under the following circumstances:

"Mr. Byrne: I expect to prove by Mr. Vignes that sometime in the latter part of November, 1927, Bobby Horn, alias Bobby McKee, bought an automobile, which was to be jointly owned by Bobby Horn, alias Bobby McKee, and Henry Riehm, to be used by each of them as their joint property.

"Mr. Craven: I object to that. These defendants are specifically charged with the crime of murder. There is no connection between the buying of an automobile and the question of guilt or innocence of these two defendants. The defense contends that anything that is as remote as

Thanksgiving, 1927, is to October 3rd, is too remote and irrelevant and is prejudicial to the defendants.

"The Court: My understanding of conspiracy is that the conspiracy exists until there is a division of the spoils. I am going to overrule the objection."

The Court had ordered the jury to be withdrawn when the above incident took place.

The trial judge, in his per curiam, states:

"Prior to this objection by counsel for defendant, one Henry Riehm had testified that he, as one of the co-conspirators in the crime for which defendants were on trial, had received only part of his share of the proceeds of the robbery which resulted in the death of James D. Acomb, and that when he asked the defendant Bobby Horn, alias Bobby McKee, for some money he was informed that they were going to buy an automobile and that an automobile was actually bought from the witness Frank Vignes.

"Until the conspiracy is finally closed, the declarations and acts of the parties in execution of the common design are admissible in evidence against any and all of those engaged in the conspiracy, since the acts or declarations of one are imputed by law to all, although such acts and declarations may have taken place outside of their presence. It is well settled that where a conspiracy is shown to have existed for the purpose of committing a robbery that the said conspiracy continues in existence until a division or disposition of the proceeds of the robbery has taken place and every act in connection with the dis-

position or division of the proceeds of the robbery is admissible in evidence, and beyond doubt relevant to the issues."

Previously, Henry Riehm had testified that he had been promised $500 by Robert McKee (alias Bobbie Horn), as his share for participating in the robbery and that he had received, in installments, a total of $375 from McKee (alias Horn) on account, when they entered into the agreement to purchase the automobile for the price of $150 from Frank Vignes out of the undisposed of spoils of the robbery.

In the case of State v. Bolden, 109 La. 484, 485, 33 So. 571, it was held that, where the undertaking of the defendants was to rob a bank and to divide the proceeds of the robbery, the adventure continued to be a joint one until the division of the proceeds took place among the co-conspirators.

Anything said or done by co-conspirators in a felonious undertaking, although happening after the commission of the unlawful acts, but before the disposition or division of the proceeds of their unlawful undertaking, is admissible in evidence against all of the other conspirators. State v. Terrell et al., 175 La. 758, 144 So. 488; State v. Taylor et al., 173 La. 1010, 139 So. 463.

The bill of exception is without merit as the testimony shows that at the time the automobile was purchased, a division of the proceeds of the robbery had not yet been effected.

The evidence was also admissible for the purpose of corroborating the test-

timony of Henry Richm, who had already testified. State v. Banks et al., 40 La.Ann. 736, 5 So. 18.

■ The third bill of exception was reserved by the defendants when Harry McGittigan was placed on the stand as a witness for the State and was being interrogated by the district attorney, as follows:

"Q. Do you know Heinie Riehm? A. Yes, sir.

"Q. Some time between the Christmas holidays of December, 1927, and New Year, 1928, or thereabouts, did you or did you not accompany Heinie Riehm for the sale of an automobile? A. Yes, sir.

"Q. Where did he go to sell it? A. Down by the Industrial Canal, about three blocks the other side of the Industrial Canal.

"Q. Did he give you any money when he sold the automobile?

"Mr. Craven: I object to any transaction unless they connect it up with the defendants here, unless they were present.

"The Court: The same ruling. This is the man that Riehm said was with him when he took the car to sell it.

"Mr. Craven: But that is outside the presence of the defendants.

"The Court: It is a corroboration of Riehm. I rule it is admissible."

At the time this witness took the stand, there was before the Court testimony showing that there had been only a partial division of the proceeds of the robbery and that Robert McKee (alias Bobbie

Horn) and Henry Riehm had jointly purchased for $150 the automobile in question out of the remainder of the undivided spoils. The conspiracy was still in existence because there had not been a final disposition of the proceeds of the robbery. The joint purchase and the sale of the automobile by the co-conspirators was unquestionably connected with the division of the sale price thereof between them. This testimony was relevant and material in corroboration of the statements of Riehm for the reasons and under the same authorities cited in connection with Bill of Exception No. 2. This bill is also denied.

■ The fourth bill of exception was reserved by the defendants to the ruling of the trial judge in refusing to grant a new trial. The only reasons urged by both of the accused for a new trial are that the verdicts are contrary to the law and the evidence and prejudicial to their rights and contain a reiteration of their objections made during the trial covered by the bills of exception which we have already discussed.

The trial judge, in his per curiam, states: "There being nothing new in said Motion for a New Trial, and the Court believing that the appellants have been given a fair and impartial trial, overruled the Motion."

In State v. Proctor et al., 165 La. 584, 115 So. 759, the Court held that a bill of exception to the overruling of a motion for a new trial, on the ground that the verdict was contrary to the law and evidence, does not present a question of law for review under Section 10, Article 7, and Section 9 of Article 19 of the Constitution

of the State of Louisiana of 1921, especially where the judge a quo states that the defendant was given a fair and impartial trial. State v. McKee, 170 La. 630, 631, 128 So. 658, and State v. Robertson, 133 La. 806, 63 So. 363.

The fifth and final bill of exception was reserved by the defendant Robert McKee (alias Bobbie Horn) to the overruling by the district court of a plea to the jurisdiction of the court, filed by him on July 19, 1938, after the jury had returned the verdict against him of "guilty without capital punishment." This plea was based upon the following allegations:

That on March 19, 1936, the defendant Robert McKee (alias Bobbie Horn) was received at the United States Penitentiary Annex, Fort Leavenworth, Kansas, under a judgment and sentence rendered in the United States District Court for the Eastern District of Louisiana; that the sentence was for a period of two years for a violation of the Harrison Narcotic Act, 26 U.S.C.A. § 1040 et seq.; that on October 18, 1937, he was illegally released from the said Penitentiary; that under the terms of the release, he was a ward of the Federal Government until March 11, 1938; that he was placed on trial on March 11, 1938, for murder, while he was still a ward of the Federal Government; and that he was illegally transferred to this jurisdiction by order of the Attorney General of the United States and without permission of the Federal Court.

The record shows that the defendant McKee (alias Horn) was sentenced in the Federal Court on March 12, 1936; and that he was placed on trial in the instant case on March 15, 1938.

Under the Act of Congress of June 29, 1932 (47 U.S.Stat. 381, 72d Congress, Session I, Chapter 310, 18 U.S.C.A. § 709a et seq.), the sentence of the defendant Robert McKee (alias Bobbie Horn) on his plea of guilty to the narcotic charge began to run from March 12, 1936, and his maximum sentence would have expired on March 11, 1938.

The pertinent part of the above referred to Statute reads as follows: "* * * That the sentence of imprisonment of any person convicted of a crime in a court of the United States shall commence to run from the date on which such person is received at the penitentiary, reformatory, or jail for service of said sentence: *Provided,* That if any such person shall be committed to a jail or other place of detention to await transportation to the place at which his sentence is to be served, the sentence of such person shall commence to run from the date on which he is received at such jail or other place of detention. No sentence shall prescribe any other method of computing the term." (Italics ours.)

The records of the Department of Justice of the United States show that the prisoner was conditionally released on October 18, 1937, and that he was discharged from federal custody on March 11, 1938. The defendant's conditional release by the United States Government was granted in accordance with the provisions of the Act of Congress of June 21, 1902, 32 U.S.Stat. 397, 57th Congress, Session I, Chapter 1140, 18 U.S.C.A. § 710 et seq.,

Section 1 of which reads: "Be it enacted * * *, That each prisoner who has been or shall hereafter be convicted of any offense against the laws of the United States, and is confined, in execution of the judgment or sentence upon any such conviction, in any United States penitentiary or jail, or in any penitentiary, prison, or jail of any State or Territory, for a definite term, other than for life, whose record of conduct shows that he has faithfully observed all the rules and has not been subjected to punishment, shall be entitled to a deduction from the term of his sentence to be estimated as follows, commencing on the first day of his arrival at the penitentiary, prison, or jail: Upon a sentence of not less than six months nor more than one year, five days for each month; upon a sentence of more than one year and less than three years, six days for each month * * *."

The certificate of conditional release issued by the United States Board of Parole, filed in evidence, clearly shows that the prisoner's release was regular and according to law, particularly under the above quoted section of the Statute. The record also discloses that the State of Louisiana made no effort to obtain the release of McKee (alias Horn) from the United States Penitentiary Annex, Leavenworth, Kansas, where he was confined prior to the expiration of the maximum term for which he was sentenced. The District Attorney made a written request of the Warden of the Penitentiary to notify him when the prisoner would be discharged. The Warden, in accordance with the request, duly notified the District Attorney who had an officer present to take the prisoner in custody after he was discharged from the Penitentiary.

Counsel for McKee (alias Horn) further contend that their client was illegally given credit for good behavior while incarcerated, and conditionally released one hundred forty-four days before his term would have expired because, being a matured man, who had committed a crime which was premeditated and for profit, and having pleaded guilty to the charge of violating the Harrison Narcotic Act, he "was not entitled to the benefits of the probation laws of the United States," citing United States v. Johnson, D.C.Cal.1932, 56 F.2d 658; United States v. Meagher, D.C.Mont., 1929, 36 F.2d 824. In those cases, the defendants made applications through motions for probation, which the court declined to grant on the ground that the movers were matured persons and had deliberately committed the crimes of which they were convicted, for profit. In short, the movers sought to escape punishment by receiving probation, which is equivalent to a suspended sentence under our laws. Neither case dealt with the question of allowing a deduction from the term of a prisoner's sentence, because of good behavior. They are, therefore, not apposite here.

There was no contest between the United States Government and the State of Louisiana as to which sovereign had preferential right to the custody and punishment of McKee (Horn) who had violated the laws of each of them.

In the case of Ponzi v. Fessenden, 258 U.S. 254, 260, 42 S.Ct. 309, 310, 66 L. Ed. 607, 22 A.L.R. 879, the Supreme Court of the United States pointed out that when a person had violated the Criminal Statutes of two different sovereigns, it is for the interested sovereigns and not for the criminal to settle which shall first inflict punishment upon him and that this is not a matter about which the criminal may complain. United States ex rel. Demarois v. Farrell, U. S. Marshal, 8 Cir., 87 F.2d 957–962; Chapman v. Scott, D.C., 10 F.2d 156 (affirmed 2 Cir., 10 F.2d 690).

In the case of State v. Harper, 28 La. Ann. 35, the Court said: "The law having declared that crimes, such as the defendants were charged with, should be tried by the Superior Criminal Court, how the case came to that court from the First District Court, whether it was on motion of the Attorney General in the First District Court, or whether the clerk of that court had been commanded to send up the information by the judge of the Superior Criminal Court, or whether the papers were presented by the Attorney General, matters not. It is sufficient for us to know that the case was in the court, and the only court having jurisdiction over them. The route by which it got there we are indifferent about. Neither do we see how any of their rights were invaded by the mode of proceeding which was adopted, or how they were deprived of any safeguard guaranteed to them by the law to make good their defense. * * *"

The plea to the jurisdiction of the Court was properly overruled and the bill of ex-

ception reserved to the ruling is without foundation.

For the reasons assigned, the verdicts of the jury and the sentences of the court are affirmed.

O'NIELL, C. J., concurs in the decree.

FOURNET, J., absent.

O'NIELL, Chief Justice.

I concur in the ruling on Bill of Exception No. 2 on the ground that there was no merit in the objection, which was, in effect, that the evidence was irrelevant. My opinion is that the evidence was relevant, especially in corroboration of the testimony of Henry Riehm, but if it was not relevant it did no harm to the defendants. I do not concur, however, in the statement, per curiam, that anything said or done by any one of several conspirators after the commission of the crime of murder and robbery, but before a division of the spoils among the conspirators, is admissible in evidence against the other conspirators. The rule is stated too broadly in the per curiam. I make the same comment with reference to Bill No. 3. As to Bill No. 5, there is no merit in the so-called plea to the jurisdiction of the court. The venue, or place where a prosecution shall be had, is the parish in which the crime was committed. The Criminal District Court in New Orleans has jurisdiction to try any person charged with the commission of a crime in this city. The proceeding by which the defendant was brought into court has nothing to do with the jurisdiction of the court.