305 So.2d 421 (1974)
STATE of Louisiana.
v.
Mavis HODGESON.
No. 54771.
Supreme Court of Louisiana.
December 2, 1974.
Rehearing Denied January 17, 1975.
*423 Ronald L. Causey, Walter R. Krousel, Jr., Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Aubert D. Talbot, Dist. Atty., A. J. Kling, Jr., Asst. Dist. Atty., for plaintiff-appellee.
DIXON, Justice.
Defendant was indicted for the murder of her son-in-law, Eugene Stevens. Prior to the trial the charge was reduced to manslaughter and the defendant was tried pursuant to a bill of information. R.S. 14:31. She was convicted and sentenced to twenty-one years at hard labor. At trial she reserved fourteen bills of exceptions, some of which had been abandoned on appeal. In defendant's brief, the remaining bills were organized into ten specifications of error; we treat the bills in the same fashion.

Specifications of Error Nos. 1-3
These specifications deal with bills reserved when the trial court denied defendant's challenges for cause of three prospective jurors. The defendant exhausted all her peremptory challenges. C. *424 Cr.P. 797 lists the following bases for challenging a juror:
"The state or the defendant may challenge a juror for cause on the ground that:
" (1) The juror lacks a qualification required by law;
" (2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
" (3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;
" (4) The juror will not accept the law as given to him by the court; or
" (5) The juror served on the grand jury that found the indictment, or on a petit jury that once tried the defendant for the same or any other offense."
The first prospective juror was challenged on the basis that he had "reached a strong conclusion" from the information he had received. Additionally, he admitted on voir dire that he had discussed the case with the marshal of Sorrento, a long time friend and co-worker. However, in response to questions throughout voir dire, the prospective juror stated he could accept and apply the presumption of the defendant's innocence and, laying aside his opinion, would consider only the testimony given at trial in determining the question of the guilt or innocence of the accused.[1]
In reviewing the entire transcript of voir dire, we do not find any abuse in the trial court's discretion in its determination that the prospective juror was capable of putting aside his own opinion and rendering an impartial decision based upon the evidence adduced at trial. State v. Richmond, 284 So.2d 317 (La.1973) and cases cited therein.
The second prospective juror was challenged because of the relationship between his employer, the owner of Stevens Meat Company, and the victim, Eugene Stevens. The prospective juror said that although he was ignorant of the exact nature of the relationship he didn't think they were brothers, only "real close." He also said that if he voted to acquit he would show up at work the next day. With regard to his alleged friendship with the victim, the juror responded to defendant's question, "How well did you know the victim?" with the following answer:
"Just by his brother; you know. I didn't know him, but I saw him a couple of times. I didn't know him too good."
We agree with the trial court that there was no showing of such a relationship between the victim and prospective juror either from employment or friendship as would justify a conclusion that the prospective juror would be influenced in arriving at a verdict. State v. Richmond, 278 So.2d 17 (La.1973); State v. Higginbotham, 261 La. 983, 261 So.2d 638 (1972); State v. Square, 257 La. 743, 244 So.2d 200 (1971).
*425 The third prospective juror was challenged because his wife was related to the family of the victim. This juror was also unaware of the exact nature of the relationship; he said he did not keep up with her relatives. He was only sure that his wife, a Stevens, was related to the victim. There was no showing that this undefined relationship would influence the juror and prevent him from rendering an impartial verdict. The trial court did not abuse its discretion in denying defendant's challenge.

Specification of Error No. 4.
This specification is based upon the introduction of the record and judgment rendered in the civil suit entitled "Glenda Hodgeson Stevens v. Eugene Edward Stevens," docket #16,876 of the Twenty-Third Judicial District Court, Parish of Ascension. The record was introduced into evidence, and the trial judge in the civil suit was permitted to read his judgment and the reasons which he gave for it. Defendant contends that this evidence was irrelevant and hearsay which caused her to be prejudiced. We do not agree.
The State's theory of the case was directly related to the civil suit and the various judgments and orders which were rendered as a result. In the civil suit for separation between the victim and the defendant's daughter, custody of defendant's grandson was awarded to her daughter with reasonable visitation rights for the victim. The State contended that there was constant interference with the exercise of these rights by the defendant and her daughter which resulted in an order rendered on January 27, 1972 prohibiting defendant and her daughter from further interfering under the penalty of contempt. On February 16, 1972 another order was issued requiring the defendant and her daughter to show cause on March 1 why they should not be held in contempt. The victim was killed on February 21, 1972.
The record was not hearsay, as it was not introduced to prove the utterances contained therein, but only to establish the existence and nature of the judicial proceedings and orders against the defendant. This documentary evidence was clearly relevant to establish the relationship between the defendant and victim and defendant's motive for procuring persons to "soften up" victim which resulted in the victim's death. A similar situation occurred in State v. Leming, 217 La. 257, 46 So.2d 262 (1950), a trial of a woman for the murder of her paramour's wife. We concluded the trial court was correct in permitting the introduction of a petition of separation which had been filed in Mississippi by the defendant prior to the murder, in order to show the motive of the defendant. See also State v. Wall, 167 La. 413, 119 So. 410 (1929) (introduction of indictment of defendant's son-in-law to show defendant's motive for the killing of a witness to his son-in-law's alleged crime).
This specification is without merit.

Specification of Error No. 5.
This specification is based upon the State's alleged failure to establish in its opening statement that the crime had been committed in Ascension Parish and thus within the jurisdiction of the trial court. Our reading of the opening statement reveals that the State did assert that the deceased lived in a trailer in Ascension Parish and was shot a short distance from his trailer after he had been lured outside by a woman pretending to have had car trouble. We agree that this was sufficient to establish the jurisdiction of the trial court.
This specification is without merit.

Specification of Error No. 6.
This specification is based upon the following question which was posed by the State to Dr. C. A. Martello, a State witness, who allegedly procured for the defendant the actual killers:
"On Redirect Examination
*426 "Q. All right, was Mavis Hodgeson serious to you, serious with you, when she talked to you about it?"
Defendant contends that this question was leading and required the witness to express an opinion concerning the seriousness of the defendant which would be a violation of R.S. 15:463.[2] The witness had previously testified without objection that at first he thought the whole thing was a joke but soon realized that Mavis was serious and that he thereafter took seriously her request to have the victim beaten.[3] The witness was therefore only reiterating and corroborating his previous testimony which had been admitted without objection; defendant was not prejudiced by the question's request for an opinion.
This specification is without merit.

Specification of Error No. 7
This specification is based upon the introduction of testimony by an ambulance driver as to what the mortally wounded victim allegedly told him on the telephone. Defendant contends that this was inadmissible hearsay. She is correct in categorizing it as hearsay. However, this testimony was admissible as part of the res gestae under R.S. 15:447 and 15:448.[4]
It is evident from the record that after being shot, defendant crawled back to the trailer and telephoned for assistance through the use of an operator. Photographs in evidence indicate that the defendant died while slumped over the telephone. The evidence further indicates that the statements of the victim to the witness were spontaneous declarations (not in response to questions) made by a person aware of his imminent death. These facts support the trial court's determination that the victim's statements constituted part of the res gestae, and were therefore admissible. State v. Jacobs, 281 So.2d 713 (La. 1973); State v. Dale, 200 La. 19, 7 So.2d 371 (1942); State v. Scott, 12 La.Ann. 274 (1857). See also, Comment, "Excited Utterances and Present Sense Impressions as Exceptions to the Hearsay Rule in Louisiana," 29 La.L.Rev. 661 (1969). Additionally, the record does not contain the witness' answer to the question; defendant therefore has failed to establish any prejudice.
This specification is without merit.

*427 Specification of Error No. 8

This specification is based upon the State's introduction into evidence of copies of defendant's telephone bills covering the months of January and February, 1972. Mr. John C. Kling, comptroller-office manager of the East Ascension Telephone Company, testified that the basic data for the telephone bills was compiled by people in his office under his supervision, and was then given to a computer service which calculated and prepared the actual bill. The actual bill denoted the customer, address, amount due for toll and long distance calls and the individual long distance calls. These bills listed the calls which had been made on the defendant's telephone to Dr. C. A. Martello in Baton Rouge, and they were introduced for the purpose of proving communications between defendant and Dr. Martello.
Defendant contends that the evidence was inadmissible because it was hearsay and violated the best evidence rule. R.S. 15:434 and R.S. 15:436. Its admission confronts this court with the issue of the admissibility of computer print-out sheets, the telephone statements in this case, under the recognized exception to the hearsay rule for business records prepared in the ordinary course of business.[5] State v. Lewis, 288 So.2d 348 (La. 1974); State v. Graves, 259 La. 526, 250 So.2d 727 (1971). See. Comment, "Business Records in Louisiana as an Exception to the Hearsay Rule," 21 La.L.Rev. 449 (1961); Green, "The Model and Uniform Statutes Relating to Business Entries as Evidence," 31 Tul.L.Rev. 49 (1956); McCormick, On Evidence, §§ 304-314 (2d Ed. 1972); 5 Wigmore, § 1517 et seq. (3d Ed. 1940); Anno: "Business Records as Evidence," 21 A.L.R. 2d 773 (1952).
The issue of introducing computer print-outs of information contained and stored in a computer system has confronted other jurisdictions recently. The majority of cases have been decided under various forms of the Uniform Business Records as Evidence Act[6] adopted by the federal government[7] and many individual states.[8] Louisiana has not adopted this act is therefore not constrained by the language of that statute.[9] The question we must answer is whether such records are admissible in this State and, if so, what standards are to be applied in order to insure *428 (1) necessity and (2) reliability, which are the bases for this exception to the hearsay rule.
The Nebraska Supreme Court confronted this issue first in Transport Indemnity Co. v. Seib, 178 Neb. 253, 132 N.W.2d 871 (1965), a suit by an insurance company to collect overdue premiums. The insurance company supplied the raw data to its computer which calculated, according to a programmed formula, the proper premium amount due. Through its data storage facilities and ability to retrieve and process this data, the computer was the company's bookkeeper; the information contained in its storage facilities was the company's record and was accessible only by use of print-outs of what was contained within it. The court found that the print-out results of the computer's calculations satisfied the requirements of necessity and reliability and were admissible under the business records exception to the hearsay rule.
The Nebraska result was followed in King v. State ex rel. Murdock Acceptance Corp., 222 So.2d 393 (Miss. 1969), where the Mississippi Supreme Court adopted the following rules for the admission of computer records and print-outs:
". . . we hold that print-out sheets of business records stored on electronic computing equipment are admissible in evidence if relevant and material, without the necessity of identifying, locating, and producing as witnesses the individuals who made the entries in the regular course of business if it is shown (1) that the electronic computing equipment is recognized as standard equipment, (2) the entries are made in the regular course of business at or reasonably near the time of the happening of the event recorded, and (3) the foundation testimony satisfies the court that the sources of information, method and time of preparation were such as to indicate its trustworthiness and justify its admission." (222 So.2d 398).
In adopting these rules as our own, we also note with approval Judge Ely's concurrence in United States v. De Georgia, 420 F.2d 889 (9th Cir. 1969), in which he stated:
". . . If a machine is to testify against an accused, the courts must, at the very least, be satisfied with all reasonable certainty that both the machine and those who supply its information have performed their functions with utmost accuracy. Therefore, it is essential that the trial court be convinced of the trustworthiness of the particular records before admitting them into evidence. And it should be convinced by proof presented by the party seeking to introduce the evidence rather than receiving the evidence upon the basis of an inadequate foundation and placing the burden upon the objector to demonstrate its weakness." (420 F.2d 895-896).
In affirming the admissibility of computer records and print-outs, we are in accord with the jurisdictions which have confronted the problem of adjusting the tested rule of evidence to the realities of contemporary business life while insuring the reliability of the information offered at trial. Merrick v. United States Rubber Co., 7 Ariz.App. 433, 440 P.2d 314 (1968); State v. Veres, 7 Ariz.App. 117, 436 P.2d 629 (1968); Brown v. Commonwealth, 440 S. W.2d 520 (Ky.1969); King v. State ex rel. Murdock Acceptance Corp., supra; Union Electric Co. v. Mansion House Center North Redevelopment Co., 494 S.W.2d 309 *429 (Mo.1973); Railroad Commission v. Southern Pacific Co., 468 S.W.2d 125 (Tex.Civ.App. Austin, 1971); cf. Kamen v. Young, 466 S.W.2d 381 (Tex.Civ.App. Dallas, 1971) (the court gave a restricted reading to the Texas statute which required that the data be prepared by someone who had personal knowledge of the act or event recorded).

Specification of Error No. 9
This specification was reserved when the trial court allowed the State to question J. W. Wallace as to the nature of his conversation with Robert Blanton III, the alleged killer. In its opening statement the State had alleged a conspiracy involving Blanton, the defendant and other persons. According to its theory, Blanton, in the company of Wallace and others, went to the defendant's home several months after the victim's death in order to demand money which Blanton claimed defendant owed him for having killed the victim. The conversation was alleged to have occurred during this visit.
Defendant contends that Wallace's testimony concerning what Blanton said during the conversation was hearsay and thus inadmissible. Defendant is incorrect in her latter contention, as this court has consistently held that under R.S. 15:455 statements made by co-conspirators prior to the termination of the conspiracy are admissible. E. g. State v. Dowdy, 217 La. 773, 47 So.2d 496, cert. den. 340 U.S. 856, 71 S.Ct. 75, 95 L.Ed. 627 (1950). R.S. 15:455 reads as follows:[10]
"Each coconspirator is deemed to assent to or to commend whatever is said or done in furtherance of the common enterprise, and it is therefore of no moment that such act was done or such declaration was made out of the presence of the conspirator sought to be bound thereby, or whether the conspirator doing such act or making such declaration be or be not on trial with his codefendant. But to have this effect a prima facie case of conspiracy must have been established."
With regard to the requirement that the statement be made "in the furtherance of the enterprise," this court has stated:
"Anything said or done by co-conspirators in a felonious undertaking, although happening after the commission of the unlawful acts, but before the disposition or division of the proceeds of their unlawful undertaking, is admissible in evidence against all of the other conspirators." State v. McKee, 193 La. 39, 190 So. 325 (1939) at 329.
The collection of money due for the murder of the victim constitutes an act in furtherance of the conspiracy's common enterprise. See, also, McCormick, On Evidence, § 267 (2d Ed. 1972).
This specification is without merit.

Specification of Error No. 10
This specification is based upon the trial judge's comment when he sustained the State's objection to a statement made by defense counsel during his closing argument. The comment occurred during the following colloquy:
"* * * What did you find?
"Shell casings, and a shotgun blast. Now, who said anything about a shotgun blast up to now?
"Mr. Talbot: Your Honor, I object again. I thought I missed this, but he's making so many that I didn'tHe just said that this officer said he found shell casings out at the scene. The officer never said anything most certainly
*430 "Mr. Krousel: Shell fragments.
"Court: He certainly never said anything about a shotgun; I can tell you that.

"Mr. Krousel: Well, we'll have to find that, Your Honor, because, if Your Honor please, I'm satisfied that he did say that a shot, the house had been hit by a shotgun, Your Honor.
"Mr. Talbot: Objection, Your Honor.
"Mr. Krousel: Wait a minute. If Your Honor please, I object to your commenting on the evidence in this case, when you said he didn't say anything about a shotgun, and I want a ruling on it and I want a mistrial right now. This case is over.
"Mr. Talbot: This case is not over anything of the kind, Your Honor. There's no suchit's absolutely ridiculous him talking about a mistrial because of anything with a shotgunThis man is flat up here lying before this jury about what he's saying. I know of no comment that has any prejudicial error on this case whatsoever. Mr. Krousel has done a good job of acting, but it's time for the acting to stop and let's get down to business.
"Court: Your objection (the State's) is sustained and your motion (the defendant's) is denied." (Emphasis supplied).
Defendant contends that the judge's comment on previous testimony violated this State's strict policy against judicial comment on the evidence enunciated in C. Cr.P. 772 and 806 (formerly R.S. 15:384) which state:
"The judge in the presence of the jury shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted." (Art. 772).
"The court shall not charge the jury concerning the facts of the case and shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted." (Art. 806).
The purpose of these statutes is to insure that the jury is in fact the judge of the law and of the facts on the question of guilt or innocence of the defendant after it has been charged as to the law applicable to the case by the presiding judge. La. Const. Art. XIX, § 9 (1921).
The decisions of this court have been consistent in the application of this rule. Any comment by the trial court concerning the charge to the jury or reasons for refusing a special charge has been found to be reversible error. State v. Lonigan, 263 La. 926, 269 So.2d 816 (1972); State v. Iverson, 136 La. 982, 68 So. 98 (1915); State v. Langford, 133 La. 120, 62 So. 597 (1913). Any comment on the credibility of a witness, State v. Ballou, 140 La. 1086, 74 So. 562 (1917) (Judge commented witness would speak English if he was at the end of his rope), or any comment with regard to a material issue or fact, has constituted the basis for a reversal. State v. Green, 231 La. 1058, 93 So.2d 657 (1957) (judge summarized testimony concerning activities of alleged kidnapper); State v. Watson, 159 La. 779, 106 So. 302 (1925) (judge commented that there was not any evidence of the defendant's character before the court); State v. Davis, 140 La. 925, 74 So. 201 (1917) (judge commented that witnesses had testified that prosecuting witness did not have a knife on his person at the time of shooting); State v. Logan, 104 La. 362, 29 So. 110 (1901) (judge commented improperly in overruling objection to admission of evidence); State v. Washington, 30 La.Ann. 49 (1878) (judge commented on defendant's assertion in closing argument that *431 rape victim had no other marks besides one laceration).
On the other hand, this court has affirmed convictions where the trial court had commented on an issue or evidence which did not have any relevance to a determination of the defendant's guilt or innocence. This has occurred where the trial court has found the defense attorney to be "traveling outside the record," State v. Breedlove, 199 La. 965, 7 So.2d 221 (1941); State v. McCollum, 135 La. 432, 65 So. 600 (1914); State v. Simon, 131 La. 520, 59 So. 975 (1912), or when the trial judge commented or explained his ruling on an objection.[11] State v. Fallon, 290 So.2d 273 (La.1974); State v. Hills, 241 La. 345, 129 So.2d 12 (1961); State v. Scott, 237 La. 71, 110 So.2d 530 (1959); State v. Nicolosi, 228 La. 65, 81 So.2d 771 (1955); State v. Walker, 204 La. 523, 15 So.2d 874 (1943); State v. Vernon, 197 La. 867, 2 So.2d 629 (1941); State v. Dreher, 166 La. 924, 118 So. 85 (1928); State v. Childers, 196 La. 554, 199 So. 640 (1940); State v. Pascal, 147 La. 634, 85 So. 621 (1920); State v. Farrier, 114 La. 579, 38 So. 460 (1905); State v. Walker, 50 La.Ann. 420, 23 So. 967 (1898); State v. Collens, 37 La.Ann. 607 (1885); State v. Mitchell, 41 La.Ann. 1073, 6 So. 785 (1889); State v. Alphonse, 34 La.Ann. 9 (1882).
We believe that the situation in the instant case falls within the second category, as an improper comment, but not one from
which the jury could infer any expression of the judge's opinion concerning a relevant issue or fact.[12] According to the State's opening statement, defendant was alleged to have hired certain persons to attack the victim; as a result, the victim was murdered. Several months later, when the defendant had failed to pay the agreed price (and subsequently the interest), her house was fired at by a rifle. It was the testimony by a deputy sheriff concerning this second incidentmonths after the killingthat was the subject of defendant's challenged statements and the trial court's comment. We agree with the trial court's per curiam that whether the weapon used in the second incident was a shotgun or rifle was irrelevant in the determination of the defendant's guilt or innocence and could not have influenced the jury's verdict. The trial court's comment therefore did not constitute a violation of defendant's statutory or constitutional right, or result in a substantial prejudice to her. State v. Michelli, 301 So.2d 577, this court, decided October 11, 1974.
This specification is without merit.
For the reasons assigned, the conviction and sentence are affirmed.
BARHAM, J., dissents with reasons.
BARHAM, Justice (dissenting).
I am of the opinion that Bill of Exceptions No. 13, which complains of the trial *432 court's comment upon the evidence, presents reversible error.
The Louisiana Constitution of 1921, Article 19, § 9, provides that in all criminal cases the jury shall be the judges of the law and of the facts on the question of guilt or innocence, having been charged as to the law applicable to the case by the presiding judge. Former La.R.S. 15:384, which is now Code of Criminal Procedure Article 806 states:
"The court shall not charge the jury concerning the facts of the case and shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted." (Emphasis here and elsewhere supplied).
Under these provisions, prior to their incorporation into the Code of Criminal Procedure of 1966, this Court concluded upon many occasions that various comments made by the judge during a criminal trial constituted comments upon the facts. Often these comments were excused on the grounds that the remarks made were not such as would influence a jury in reaching a verdict. State v. Walker, 204 La. 523, 15 So.2d 847, 877 (1943); State v. Scott, 237 La. 71, 110 So.2d 530, 540 (1959) (both of these cases are relied upon by the State). In State v. Langford, 133 La. 120, 62 So. 597 (1913); State v. Iverson, 136 La. 982, 68 So. 98 (1915); State v. Davis, 140 La. 925, 74 So. 201 (1917), and State v. Ballou, 140 La. 1086, 74 So. 562 (1917), comments upon the facts by the judge were found to constitute reversible error. In Langford, the judge refused a requested charge of self-defense with the explanation, "I do not think the request is applicable in the case." The Court reversed. In Iverson, the judge made a comment upon the facts when he refused a requested charge on accidental homicide and stated, "I find no evidence in the case to justify such a charge." Again, the Court reversed. In Ballon, reversible error occurred when the judge commented unkindly as to the credibility of a defense witness at the time he was called to testify. State v. Davis presented circumstances almost identical to those in the case before us and the comment in that case is very similar to the comment presented here. In the Davis case, the judge refused to order a jury to disregard a statement made by the State in closing argument, stating:
"I distinctly remember that it has been testified to by many witnesses that the prosecuting witness did not have a knife on his person at the time of the shooting." 140 La. at 927, 74 So. at 202.
The conviction and sentence were reversed on the basis that the judge had commented upon the facts in contravention of the Constitution and statutory law.
I believe that the strongest logic for finding reversible error in the statement we consider lies in the positive change in the law in the 1966 Code of Criminal Procedure. In addition to Article 806, supra, the Code provides in Article 772:
"The judge in the presence of the jury shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved or refuted."
Part of the Official Revision Comment states:
"* * * The Advisory Committee unanimously adopted the article, favoring a strict rule against comment on the facts by trial judges. At the general meeting also, there was strong opposition to allowing judges to comment on the facts."
The redactors of our Code of Criminal Procedure were apparently so disturbed about the constitutional mandate (Article 19, § 9) and the obvious prejudicial effect upon a jury that flows from a judge's *433 comment upon the facts that they considered it necessary to repeat in the Code the prohibition against a judge making comments upon the evidence. See State v. Lonigan, 263 La. 926, 269 So.2d 816 (1972). In State v. Green, 231 La. 1058, 93 So.2d 657 (1957), decided under prior law, Justice McCaleb, who had written State v. Scott,[*] authored an opinion which held comment upon the evidence to be reversible error to the extent that instructions to a jury to disregard the remarks would be insufficient to cure the defect.
The judge's statment, "He certainly never said anything about a shotgun; I can tell you that," is clearly a comment or an opinion as to what has been proved or not proved; such a statement is reprobated by La.C.Cr.P. arts. 772 and 806. The majority has determined that this statement does not constitute reversible error under La.C. Cr.P. art. 921 by reference to information gleaned from the State's opening statement. It cites the Court's decision in State v. Michelli, 301 So.2d 577 (La.1974), wherein we distinguished our rule of law under La.C.Cr.P. art. 921 and the federal harmless error rule which allows a review of the evidence independent of the error urged to determine whether the defendant's guilt has been overwhelmingly proved independently and the error may be considered harmless. It is my opinion that the majority's action in resorting to information contained in the State's opening statement to reach its conclusion that the matter upon which the trial court commented was irrelevant and that there has been no substantial violation of defendant's statutory rights under La.C.Cr.P. arts. 772 and 806 is not in accordance with La.C.Cr.P. art. 921 as interpreted in the Michelli decision.
Because it is my belief that the statements of the trial court amount to a substantial violation of a constitutional and statutory right of the defendant I respectfully dissent from the affirmance of this conviction and sentence.
NOTES
[1] For example, during voir dire the prospective juror answered as follows:

"MR. TALBOT: Then what you're simply stating is any opinion that you may have at this time is something that was formed by what you may have heard on the streets or here, there and yonder, or read, but nevertheless, you could render a fair and impartial verdict in the trial of this matter; put aside any opinion and go into this trial, having given the accused in this case the benefit of all reasonable doubts and giving the accused a fair trial and also giving the State a fair trial; do you feel that you can do this?
"MR. LOOPER: Yes, sir."
[2] R.S. 15:463 reads as follows:

"Except as otherwise provided in this Code, the witness can testify only as to facts within his knowledge, and neither as to any recital of facts heard by him, nor as to any impression or opinion that he may have."
[3] The witness had previously testified as follows:

"Q. Dr. Martello, Mr. Krousel asked you if you had talked to me about this before, of course, which you had on several occasions. He further asked if you had given a statement to anyone in connection with this matter. Further, you answered Mr. Krousel's question a minute ago that you thought this was all a big joke. Now, did you really think this was a joke, Dr. Martello?
"A At the last it got serious. I was
"Q At the time that they were talking about money, you and Mavis Hodgeson were talking about money, to get somebody hurt or beat up or what-have-you, softened up in any way, did you think that was a joke?
"A At the beginning?
"Q At any time.
"A I didn't think the boy would do it. I knew Mavis was serious, but I didn't think the boy would do it."
[4] R.S. 15:447 and 15:448 read as follows:

"Res gestae are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events. What forms any part of the res gestae is always admissible in evidence." (R.S. 15:447).
"To constitute res gestae the circumstances and declarations must be necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction." (R.S. 15:448).
[5] The common law rule has been stated in the following terms:

". . . A permanent record made in the ordinary course of business, by a person unavailable for testimony, from personal knowledge of the facts recorded or from information furnished by one having a business duty to observe and report the facts, is admissible as proof of the facts recorded, in the absence of a strong motive to misrepresent, if the record is the first collected and recorded memorial." (21 La.L.Rev. 449, 451).
[6] "The Uniform Business Records as Evidence Act provides: `A record of an act, condition or event, shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.'" (9 Uniform Laws Acts 387).
[7] See 28 U.S.C. § 1732 and Federal Rules of Evidence (1973) 803(6) and 803(7), which specifically include "data compilations."
[8] See 5 Wigmore §§ 1519, 1520 (3d Ed. 1940).
[9] See Daggett, "Suggestions for the Consideration of the Council of the Louisiana State Institute," 5 La.L.Rev. 377, 401 (1943). For a discussion of this issue see, "Comment, Computer Print-Outs of Business Records and Their Admissibility in New York," 31 Albany L.Rev. 61 (1967); Note. "Admissibility of Computer-Kept Business Records," 55 Cornell L.Rev. 1033 (1970); Note, "Admissibility of Computer Business Records as an Exception to the Hearsay Rule," 48 N.C. L.Rev. 687 (1970); Comment, "The Admissibility of Computer Print-Outs Under the Business Records Exception in Texas," 12 South Texas L.J. 291 (1970).

By statute, Florida and Iowa have specifically exempted computer records from the hearsay rule. Fla.Stat.Ann. § 92.36(2) (Supp.1969); Iowa Code Ann. § 622.28 (Supp.1970). For example, the Florida statutory provision reads:
"A record of an act, condition or event, including a record kept by means of electronic data processing, shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."
[10] The existence of similar hearsay exceptions in evidence laws of many states was recognized and constitutionally approved in Dutton v. Evans, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed. 2d 213 (1970) and Krulewitch v. United States, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949).
[11] In State v. Pascal, infra, we stated:

"The spirit of the law forbids comment upon, reference to, or allusion by the judge based upon the evidence at any stage of the trial; and any expression of opinion by the judge during the progress of the trial, made in the presence of the jury or out of their presence, is to be condemned. It is the duty of the judge to carefully abstain from any expression, both in ruling upon the admissibility of evidence and in his charge to the jury; and any clear though hasty and inadvertent expressions of opinion touching upon any material fact developed by the evidence might well be regarded as fatal to the proceedings." (85 So. at 621-622).
[12] In State v. Green, supra, we stated the rule to be:

". . . If an inference can be drawn from the objectionable statement that it is an expression or implication of an opinion as to the guilt of the accused, the error cannot be cured by an instruction to the jurors that the remarks be disregarded because the view of the judge on any important fact carries such weight with the jurymen that it is difficult to believe that it could be erased from their minds." (93 So.2d at 659).
[*] 237 La. 71, 110 So.2d 530, cert. den., 361 U.S. 834, 80 S.Ct. 85, 4 L.Ed.2d 75 (1959). State v. Walker, 204 La. 523, 15 So.2d 874 (1943) had been heavily relied upon in the Scott case. The comment in Walker found not to constitute reversible error was one made when the judge ruled that testimony was admissible as part of the res gestae, with a concluding remark, "That it all took place in two or three minutes." In State v. Green, there appears a specific intent to overrule or modify State v. Walker and State v. Scott. The comment in Green was, "It seems to me like its definitely all part of the res gestae, all together. She got in the car, he forced her in the car and forced her to drive off with him." The court then instructed the jury to disregard anything he had said regarding the testimony. Admonition was found insufficient to erase the prejudicial effect of the comment and the case was reversed.