WILLIAMS, Judge.
Plaintiff/Appellant, Professional Credit Service of New Orleans, Inc., brought this appeal after the trial court dismissed without prejudice its suit against defendants, Linda Lee Harris wife of/and Lawrence Harris, for the balance due on Mrs. Harris’ open account with Ochsner Clinic for charges totalling $913.94. Plaintiff's principal argument is the trial court erred in *1005 ruling that the testimony of Ochsner’s Custodian of Records was insufficient to verify the accuracy of the computer records of Mrs. Harris’ account because she had no independent knowledge of Mrs. Harris’ treatment. We agree. Accordingly, we reverse and remand so that the lower court may rule on the issue of attorney’s fees pursuant to LSA-R.S. 9:2781.
FACTS AND PROCEDURAL HISTORY
This suit involves the charges Mrs. Harris incurred while a patient at Ochsner Clinic under the primary care of Dr. Hinde-lang between March 19, 1985 and August 11, 1986. The $913.94 owed for past due charges is not a result of a single illness; instead, the amount reflects charges that accrued during Mrs. Harris’ seventeen month relationship with Ochsner Clinic.[1] Mrs. Harris initially went to Dr. Hindelang due to her inability to conceive. She later became pregnant, and was in that condition at the time she terminated her relationship with Ochsner Clinic and Dr. Hindelang.
On April 1, 1986, Mrs. Harris was admitted to Ochsner’s emergency room due to an abdominal infection. She was successfully treated by another physician and then referred back to Dr. Hindelang. A portion of the outstanding charges are attributable to this illness. A few months later, in August, Mrs. Harris began feeling weak and dizzy. And Dr. Hindelang had her admitted to Ochsner Hospital for tests and exams. While in the hospital, Mrs. Harris abruptly terminated her relationship with Dr. Hindelang and Ochsner Clinic.[2] She then went to a friend’s physician who gave her iron shots which, in Mrs. Harris’ opinion, cured her of her ailment.
On November 9, 1987 Ochsner Clinic assigned Mrs. Harris’ open account for physician’s fees and medical supplies to plaintiff, Professional Credit. The following day, Professional Credit sent a formal demand letter to Mr. and Mrs. Harris, citing LSA-R.S. 9:2781 and requesting the $913.94 due. The postman left two notices for the Harris’ at their correct address, one on November 12, 1987 and another on November 17, 1987, but the Harris’ never claimed their letter.[3] The unclaimed letter was returned to Professional Credit and is part of the record. Thereafter, on December 9, 1987, Professional Credit filed suit claiming $913.94 due on Mrs. Harris’ open account and reasonable attorney’s fees which it asked to be fixed at 33⅛%. The Harris’ answered, denying plaintiff’s allegations and affirmatively avering failure of consideration. The trial commenced on June 27, 1988, with both parties presenting their cases in chief.
Professional Credit called Mrs. Harris as its first witness. She admitted that she had been a patient of Ochsner Clinic and Dr. Hindelang. Then, Professional Credit called Margaret Prima, assistant supervisor of the collection department at Ochsner Clinic and custodian of accounts, she testified that the four page computer printout of the account of Linda Lee Harris was part of the business records of Ochsner Clinic and that it was true and correct in every detail. Defense counsel then began to object to evidence, not on the grounds of hearsay, but on the grounds that Prima did not have personal knowledge of the contents of the documents because she had not entered the charges or prepared the statement. The court sustained these objections and ruled that Prima could testify as to what the records reflect, but not as to their authenticity and accuracy. On cross-examination Prima also testified that, although she knew the services reflected on the *1006 printout had actually been rendered, she could not explain the medicals. For example, she could not explain what occurred during the “prep” on April 1, 1986.
Defendants then presented their failure of consideration defense, asserting the argument that they need not pay the Ochsner Clinic bill because Mrs. Harris received no improvement under Dr. Hindelang’s care and she derived no benefit from those charges.
At the close of defendants’ presentation of evidence, the trial court took the matter under submission. Judgment was thereafter rendered on July 1,1988 and, at plaintiffs request, reasons for judgment were provided on August 10, 1988. Plaintiff subsequently perfected its devolutive appeal.
ASSIGNMENT OF ERROR
Plaintiff asserts that the testimony of Ochsner Clinic’s financial representative and custodian of delinquent accounts was sufficient to allow the admission of the account into evidence to prove Mrs. Harris’ debt, despite the fact that the representative had no personal knowledge concerning the actual rendition of services. Defendant counters by asserting that Ochsner’s business records should not be allowed into evidence because plaintiff failed to present an adequate foundation proving the authenticity of the business records, citing the three steps outlined in State v. Hodgeson, 305 So.2d 421 (La.1974), and because there were discrepancies as to charges on the printout that Prima could not explain.
Initially, we note that defendants have waived their right to assert their primary rebuttal that the business records are hearsay, because plaintiff did not lay the proper foundation for the introduction of computerized records. Thus, although the foundation for the computer printouts may not have been sufficient to overcome a timely hearsay objection, see State v. Hodgeson, 305 So.2d at 428; LSA-C.E. art. 803(6) and comments, defendants’ failure to raise the hearsay objection before the trial court waived their right to assert the objection on appeal. LSA-C.C.P. art. 1635; Schoonmaker v. Capital Towing Co., 512 So.2d 480, 486 (La.App. 1st Cir.1987), writ den., 514 So.2d 458 (La.1987).
Defendants’ second rebuttal, that Prima was not the proper party to testify to the accuracy and authenticity of the records, was asserted before the trial. However, that argument is contrary to this courts ruling in Touro Infirmary v. Tonry, 522 So.2d 1267, 1268 (La.App. 4th Cir.1988), where this court held:
We find no error in [sic] introduction of the hospital records in the Touro claim. The records were identified by Touro’s financial representative and custodian of records. She testified the records were compiled in the normal course of business and testified to their reliability and authenticity. It is of little moment that she did not herself prepare them, or that she was not custodian of records throughout Carol Tonry’s hospitalization.
Likewise, in order to introduce Ochsner Clinic’s records of Mrs. Harris’ account, Prima, the Custodian of Records, did not need personal knowledge of the facts recorded on the billing statement. Touro Infirmary v. Tonry, 522 So.2d at 1268; see also LSA-C.E. art. 803, comment (6)(e). Prima testified that in the normal course of business the physician’s charge slips were entered into the computer and that the computer printout of Linda Lee Harris’ account was part of the business records of Ochsner Clinic and were true and correct in every detail. It is inconsequential that she did not input the charges into the computer or have independent knowledge of the information contained within the record. The evidence was sufficient to establish plaintiff’s prima facie case that the Harris’ owe $913.94 on Mrs. Harris’ open account with Ochsner Clinic.
If the Harris’ had presented evidence that cast doubt upon the accuracy of the business records or that questioned whether services had actually been rendered, plaintiff would have had to counter any doubt created by defendants’ evidence by introducing the appropriate rebuttal evidence. However, the trial court record *1007 shows that defendants never denied receiving Ochsner’s services and never alleged that the invoice was inaccurate in any detail. Instead, the Harris’ limited their defense to failure of consideration, that Mrs. Harris derived no benefit for the services rendered, a defense they failed to prove.
The charges on the four page computer printout of Mrs. Harris’ account are for seventeen months of physician fees and medical services. The fees include, but are not limited to, the tests and exams Mrs. Harris underwent while trying to conceive, i.e. biopsy-endometrium, complete blood count (CBC), and pregnancy test-slide; while having emergency care in April of 1986, and while in the hospital in August of 1986. The Harris’ failure of consideration defense claims that because they are not satisfied with the results of Dr. Hinde-lang’s care in August of 1986, they need not pay any of the past due charges owed to Ochsner Clinic. Defendants’ argument is overly broad. The facts of their defense extends only to the charges that resulted from the August, 1986 care provided Mrs. Harris. Those facts would never relieve the Harris’ of their obligation to pay the outstanding charges due Ochsner Clinic for fees and supplies unrelated to Mrs. Harris’ August 1986 treatment.
Nevertheless, the Harris’ failed to prove their defense. The only evidence they introduced to support their defense was their own testimony. This evidence is woefully insufficient to show Dr. Hinde-lang provided inadequate care. Defendants needed expert witnesses to establish the standard of care required of Dr. Hinde-lang and to establish that Dr. Hindelang failed to provide that standard of care. Without that evidence, their defense failed.
Accordingly, the judgment of the lower court is reversed and there is judgment in favor of plaintiff, Professional Credit Service of New Orleans, Inc., and against defendants, Linda Lee and Lawrence Harris in the amount of $913.94. This suit is remanded to the trial court for a ruling on the issue of attorney’s fees pursuant to LSA-R.S. 9:2781, with assignment of costs to await final disposition.
REVERSED AND REMANDED.
SCHOTT, C.J., concurs in part, dissents in part.

. The four page computer invoice chronicles Mrs. Harris’ account by date, department, description, (i.e. "Routine veni puncture,") and amount charged. It also lists all of Mrs. Harris’ personal payments as well as her insurance company’s payment.

. ... "They took x-rays; they came back negative. He said there was nothing wrong. He came into my room that Monday morning; he told me, he said "What is your problem? Why have you stopped taking my tests?” And I looked at him; I said “Are you crazy, are you speaking to me?" He said "Yes, I am speaking to you." I say “I am not crazy. What is I in here for? I am sick; I am weak; I am dizzy. I am not getting no better. I am getting out of here.”
(Mrs. Harris; tr. testimony p. 32)

.Mrs. Harris testified that she did not know why the letter went unclaimed.