# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 12-1458

**STATE OF LOUISIANA**

**VERSUS**

**ROBERT JAMES THOMAS**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF ACADIA, NO. 78,820
HONORABLE EDWARD D. RUBIN, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Elizabeth A. Pickett, and John E. Conery, Judges.

**CONERY, J., concurs in the result.**

**REVERSED AND REMANDED FOR NEW TRIAL.**

Michael Harson
District Attorney - 15th Judicial District Court
P. O. Box 3306
Lafayette, LA 70502-3306
Telephone: (337) 232-5170
COUNSEL FOR:
    Plaintiff/Appellee - State of Louisiana

Annette Fuller Roach
Louisiana Appellate Project
P. O. Box 1747
Lake Charles, LA 70602-1747
Telephone: (337) 436-2900
COUNSEL FOR:
    Defendant/Appellant - Robert James Thomas

**David Michael Smith**
**P. O. Box 288**
**Crowley, LA 70526**
**Telephone:  (337) 788-8831**
**COUNSEL FOR:**
      **Plaintiff/Appellee - State of Louisiana**

**Robert James Thomas**
**Pine - 2**
**Louisiana State Prison**
**Angola, LA 70712**

**THIBODEAUX, Chief Judge.**

The defendant, Robert James Thomas, appeals a jury verdict finding him guilty of second degree murder, and appeals the trial court's judgment denying him a new trial. We reverse the jury verdict because the trial judge improperly questioned witnesses and grant the defendant a new trial.

## I.

## ISSUES

We must decide whether the trial court erred in exceeding the scope of proper questioning of witnesses in the presence of the jury.

## II.

## FACTS AND PROCEDURAL HISTORY

On May 19, 2009, the defendant, Robert James Thomas, allegedly knocked August Carter to the ground with one punch to the jaw and then kicked him twice in the head while he was on the ground. Carter died the following morning of blunt force injury to the head.

Thomas was indicted on December 21, 2011, for the second degree murder of Carter, a violation of La.R.S. 14:30.1. A jury trial found him guilty of second degree murder. On June 14, 2012, Thomas filed a Motion for New Trial asserting that the evidence was contrary to the law and evidence. The trial court denied the motion without a hearing.

Thomas was sentenced on June 19, 2012, to life imprisonment without the benefit of parole, probation, or suspension of sentence. His appeal contends

that: (1) the evidence was insufficient to sustain the verdict of second degree murder; (2) the trial court erred when it made impermissible comments on the defendant's guilt or innocence by questioning witnesses during the trial in the presence of the jury without the defendant's consent; and (3) the defendant's counsel provided ineffective assistance by failing to submit "material evidence" that would have exonerated the defendant of second degree murder.

We find merit in Thomas's second assignment of error. On that basis, as fully set forth below, we reverse his conviction and remand the case for a new trial. We pretermit discussion of the two remaining assignments of error.

III.

## STANDARD OF REVIEW

If the effect of a question or comment is to permit a reasonable inference that it expresses or implies the judge's opinion as to the defendant's innocence or guilt, this constitutes a violation of the defendant's statutory right to no-comment and thus requires reversal. *State v. Green*, 231 La. 1058, 93 So.2d 657 (1957).

IV.

## LAW AND DISCUSSION

### Questioning of Witnesses

Thomas contends that the trial court committed reversible error by asking detailed questions of the State's three main witnesses as to the specifics of the alleged crime, impermissibly recapitulating the evidence, highlighting facts relevant in the case, and suggesting to the jury the court's view of the facts.

Thomas asserts that this violation of La.Code Crim.P. art. 772 was particularly damaging in his case where the witnesses' testimony was either vague, inconsistent, or the judge's question was not previously asked by the prosecution. Thomas further contends that the trial court improperly questioned the witnesses without the parties' consent in violation of La.Code Evid. art. 614(D). We agree with Thomas on both points.

Article 772 of the Louisiana Code of Criminal Procedure, referred to as the "no-judge-comment rule," states: "The judge in the presence of the jury shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted." See identical prohibition regarding jury charges in La.Code Crim.P. art. 806. The Century-old rule is that a "[j]udicial comment upon the facts or the evidence in the presence of the jury is a *noncorrectable error which must result in mistrial or reversal*. [La.Code] Cr.P. [art.] 772[; La.Code] Cr.P. [art.] 806." *State v. Brevelle*, 270 So.2d 852, 855 (La.1972) (citing *State v. Lonigan*, 263 La. 926, 269 So.2d 816 (1972); *State v. Iverson*, 136 La. 982, 68 So. 98 (1915); *State v. Langford*, 133 La. 120, 62 So. 597 (1913) (emphasis added).

In *State v. Williams,* 375 So.2d 1379 (La.1979), where the trial court extensively questioned a witness, the Louisiana Supreme Court explained the no-judge-comment rule and reversed the conviction on the ground that the questioning constituted improper comments on the evidence:

> The no-judge-comment rule is designed to safeguard the role of the jury as the sole judge of the facts on the issue of guilt or innocence. *State v. Hodgeson,* 305 So.2d 421 (La.1974) and decisions there

3

cited. Thus, if the effect of a question or comment is to permit a reasonable inference that it expresses or implies the judge's opinion as to the defendant's innocence or guilt, this constitutes a violation of the defendant's statutory right to no-comment and thus requires reversal. *State v. Green*, 231 La. 1058, 93 So.2d 657 (1957). Likewise, any comment or question by the judge expressing or implying his opinion with regard to a material issue is reversible. *State v. Hodgeson*, 305 So.2d 421, 421 (La.1974) (summarizing decisions).

The no-comment rule does not bar a trial judge from asking clarifying questions in the presence of the jury; nevertheless, in the exercise of this power, the judge's questioning must be cautiously guarded so as not to constitute an implied comment. *State v. Nicholas*, 359 So.2d 965 (La.1978). The judge may even question a witness as to a material matter which has been omitted, providing he does so in an impartial manner and conducts his examination in such a way that he does not indicate his opinion on the merits or any doubt as to the credibility of the witness. *State v. Groves*, 311 So.2d 230 (La.1975). See, generally, Joseph, Work of the Appellate Courts in 1974-75 Criminal Trial Procedure, 36 La.L.Rev. 605, 624-26 (1976).

However (whatever its wisdom), the legislative imposition of the no-comment rule represents a considered determination that the trial judge's role is essentially as an impartial umpire in an adversary trial, rather than as an active participant in the development or presentation of evidence. Therefore, as we warned in *State v. Wagster*, 361 So.2d 849, 856 (La.1978):

> " * * * (Q)uestioning of witnesses in a criminal jury trial by the judge is a practice to be avoided unless deemed indispensible to a fair and impartial trial. A judge should be constantly aware of the basic premise of a criminal trial which calls upon the State, not the judge, to prove the defendant's guilt beyond a reasonable doubt. It is enough for the judge to impartially and wisely regulate the conduct of the trial without participating in the interrogation of witnesses, a practice fraught with danger of prejudice to the defendant."

*State v. Williams*, 375 So.2d at 1381-82 (footnote omitted).

Here, the trial judge interjected himself into the prosecution's case, recapitulating and repeating only certain testimony of three main witnesses for the prosecution, thereby implying his opinion of the evidence and giving it weight at the same time. The trial court first questioned Joseph Lovings, the State's first witness. The State asked Lovings about his encounter with the defendant, Thomas, on the afternoon of the incident at Joe's Club, apparently in an attempt to get to the later events at the club. Lovings explained that Thomas, his cousin, was upset and crying about an incident earlier in the day and that Lovings was trying to calm him, but the State had not yet elicited information about what occurred at the club that involved Carter and Thomas. The following colloquy took place:

> Q. And why were you talking to him that evening? I'm not understanding. Was he trying to fight or was he in a bad mood or - -
>
> MR. HOWIE: (Defense counsel) Your Honor, I'm going to object. It's a leading question.
>
> THE COURT: Listen, Mr. Lovings, what happened on the night of May 19, 2009 at Joe's Lounge?
>
> MR. LOVINGS: What happened that day?
>
> THE COURT: Yes. What did you witness?
>
> MR. LOVINGS: Well, I didn't actually see anything, Your Honor, but I know - - I can tell you - - I know I didn't actually see nothing. I know disregard.
>
> THE COURT: What is disregard?
>
> MR. LOVINGS: With Mr. Carter and James.
>
> THE COURT: Who is James?
>
> MR. SMITH: (Prosecutor) It's Robert James Thomas, Judge.

5

THE COURT: Okay. In regards to what? What happened between them?

MR. LOVINGS: Mr. Carter was hit.

THE COURT: Did you see the hit?

MR. LOVINGS: No, sir, I didn't.

THE COURT: How do you know he was hit?

MR. LOVINGS: I don't actually know if he - - I just turned around the man he was on the ground.

THE COURT: Mr. Carter was on the ground?

MR. LOVINGS: Yes, sir.

THE COURT: Was anybody on top of Mr. Carter?

MR. LOVINGS: I never seen none of that, Your Honor.

THE COURT: Do you know who hit Mr. Carter?

MR. LOVINGS: Never seen none of that, Your Honor.

THE COURT: Well, there's no question that Mr. Carter was hit and he was on the ground?

MR. LOVINGS: I never seen none of that.

THE COURT: Wait, you said Mr. Carter was hit, right?

MR. LOVINGS: Yes, sir, I seen he was hit but I never seen who hit him.

THE COURT: Right. But you saw Mr. Carter on the ground?

MR. LOVINGS: Yes, sir.

THE COURT: And that's all you know about this incident?

MR. LOVINGS: That's it.

THE COURT: You didn't see who hit Mr. Carter? All right. Anything else, Mr. Smith?

6

While some of the above questions may qualify as permissible "clarifying questions," the remaining questions were more detailed, relevant to the determination of guilt or innocence, and prohibited. *See State v. Williams*, 375 So.2d 1379.

More specifically, the second time the trial court questioned a witness, Mr. Carrington was explaining to Mr. Smith, the prosecutor, why he had initially told the investigator that he had seen nothing that happened between Thomas and Carter that night at Joe's Club:

> Q. If you would have told Mr. Poullard that Robert [James] Thomas had [done] it like you're testifying today, what would have happened to you?
>
> A. Probably would have got in a fight with him [James].
>
> THE COURT: That's conjecture. Conjecture.
>
> BY MR. SMITH:
>
> Q. What were you afraid of happening to you?
>
> BY MR. CARRINGTON:
>
> A. Getting hurt.
>
> Q. So that's why you changed your story to Mr. Poullard?
>
> A. Right.
>
> THE COURT: Help me understand something. You're saying tier, when you say tier, you mean the same cell? Jail cell?
>
> MR. CARRINGTON: Like the same dorm.
>
> THE COURT: Same dorm. Okay. In the jail, though?
>
> MR. CARRINGTON: Right.
>
> THE COURT: Mr. Carrington, I need to know from you on that evening of May 19, 2009, there's no question in

7

your mind that you saw this defendant hit Mr. August Carter?

MR. CARRINGTON: Right.

THE COURT: And did you see Mr. Carter fall as a result of that hit - - of that lick?

MR. CARRINGTON: I want to say he stagger [sic] or - - I'm not sure cause I - - you know, I left. I don't know if he fell or he stumbled or - -

THE COURT: And there's no question in your mind that Mr. Ira Smith at the behest or the direction of Mr. Robert Thomas was told to go get August Carter out of the club?

MR. CARRINGTON: Right.

THE COURT: You heard that?

MR. CARRINGTON: Right.

THE COURT: And you were there. All right. Thank you, sir. You're free to go. Next witness.

MR. HOWIE: Your Honor, I have one more thing as a re-cross from his statement.

THE COURT: No, sir. No, sir. Next witness.

The above colloquy is particularly damaging because it summarizes the testimony for the jury, even isolates it and emphasizes it in a way that suggested the court's view of the defendant's guilt. It also implied a strong eye-witness account by Carrington of the defendant's actions in sending Ira Smith to get Carter so Thomas could ambush him as he exited the bar. No one testified that Carter was lulled into an ambush; and Ira Smith, Carter's cousin, denied that he was sent to get Carter and denied that he had even seen Thomas that day.[1]

---

[1]Ira Smith testified that when he went in the bar, he saw his cousin, August Carter, sitting at the bar drinking a beer; and that "Rachel" came in the bar later and got Carter, and Ira stayed inside and started shooting pool. Ira seemed to indicate that all of this occurred after the fight.

Mr. Carrington's whole testimony was not strong, but was extremely tenuous, severely inconsistent, contrary to other evidence, confusing, and sometimes non-sensical. This is important because Carrington was the only one who testified that he saw Thomas hit Carter, though he told the investigator that he had not seen anything of the fight. At trial, Carrington testified that Carter and Thomas chatted briefly after Carter exited the bar, *then* Thomas hit Carter on the jaw. A minute later, he testified that the hit was immediate when Carter walked outside. Carrington also testified that Carter did not seem to know the punch was coming, but he *probably* tried to block it when his hands went up. This begs the question, if a person does not see something coming, how can he at the same time try to block it? Carrington testified that he left *after* the lick on the jaw; yet he also testified that he left *before* Ira Smith went inside to get Carter; he also said he could *not remember* whether the punch to the jaw was *before or after* Ira Smith went inside to get Carter.

Thus, the trial judge's comments and implications, by repeating only *certain parts* of Carrington's testimony, though the judge may have been attempting clarification, resulted in highlighting and summarizing only certain facts, thereby becoming an active participant in the presentation of the evidence. This constitutes just the kind of error that our legislation prohibits and that our highest court warns against.

The third incident occurred during the State's redirect examination of the witness Glen Wheeler, who testified that he saw Thomas kick the victim in the face after he was on the ground. Wheeler's testimony was also inconsistent. He said he could not really see Carter on the ground, but Carter was really knocked unconscious for a while. Carter then got up for a while and left the premises.

When asked whether someone helped Carter off the ground, Wheeler said, "I don't know. I wasn't there. I had left." During cross examination, Mr. Wheeler also admitted that he had previously told the investigator that he had not seen a kick. After the State attempted to rehabilitate Mr. Wheeler's testimony, the trial judge asked:

> THE COURT: Mr. Wheeler, there is no question you saw this gentlemen kicking Mr. Carter?
>
> MR. WHEELER: Yes, sir, kicking him.
>
> THE COURT: And kicking him in the face as you said?
>
> MR. WHEELER: Yes, sir.
>
> THE COURT: No question about that on May 19 of 2009?
>
> MR. WHEELER: But he kick [sic] him, though, but I ain't - - he kicked him, though.
>
> THE COURT: While he was on the ground?
>
> MR. WHEELER: Yes, sir.
>
> THE COURT: And that happened at Joe's Club or the Oasis or whatever it's called?
>
> MR. WHEELER: Yes, sir.
>
> MR. HOWIE [defense counsel]: Your Honor, I – with due respect I would object to the Court asking questions of this witness.
>
> THE COURT: We'll note your objection for the record.

As indicated, the three witnesses' testimonies were vague, circuitous, and self-contradictory; two essential witnesses changed their stories from the time they were first interviewed; and they gave barely articulable reasons for their different version of what occurred. In recapitulating this internally inconsistent testimony, the trial judge gave it a definite quality that did not exist; he took on an

adversarial role in favor of the prosecution; and he expressed or implied his opinion as to Thomas's innocence or guilt.

Additionally, "In a jury trial, the court may not call or examine a witness, except upon the express consent of all parties, which consent shall not be requested within the hearing of the jury." La.Code Evid. art. 614(D). Here, neither Thomas nor his counsel gave consent for examination by the trial judge of the State's witnesses.

## Timeliness of Objection

Further, while Thomas did not object the first two times the judge interjected himself to question the prosecution's witnesses, he did object the third time it occurred. "Objections to the calling of witnesses by the court or to questioning of witnesses by it *may* be made *at the time **or** at the next available opportunity when the jury is not present*." La.Code Evid. art. 614. In this case, there was no recess between the testimonies at issue. The State does not address the timeliness of the defendant's objection. We find that the objection was preserved for this appeal. Moreover, Article 614(C) uses the permissive "may" instead of the mandatory "shall." In a case such as this which mandates a life sentence, and where the error was so fundamentally unfair and prejudicial to the defendant, no contemporaneous objection was necessary. *See State v. Colligan*, 95-880 (La.App. 3 Cir. 8/7/96), 679 So.2d 184.

## Motion for New Trial

Thomas's motion for a new trial was denied. Louisiana Code of Civil Procedure Article 1972(1), provides that a new trial shall be granted "[w]hen the verdict or judgment appears clearly contrary to the law and the evidence."

11

Accordingly, where the trial court's questions and remarks constituted comments on the facts of the case, contrary to our express law (La.Code Crim.P. art. 772 and La.Code Evid. art. 614) and the jurisprudence of this court and our supreme court, thereby depriving the defendant of his right to a fair trial, we find that he is entitled to a new trial. *See State v. Green*, 93 So.2d 657.

V.

## CONCLUSION

Based upon the foregoing, we reverse the jury's guilty verdict and conviction against Robert James Thomas for second degree murder, and we remand the case to the trial court for a new trial.

**REVERSED AND REMANDED FOR NEW TRIAL.**