CHEHARDY, C.J.
IxOn appeal, defendant challenges his conviction for manslaughter. For the following reasons, we affirm defendant’s conviction and sentence but remand for correction of the commitment.
Procedural History
On September 8, 2011, a Jefferson Parish Grand Jury indicted defendant, Levell Johnson, with second degree murder, in violation of La. R.S. 14:30.1, and possession of a firearm by a convicted felon, in violation of La. R.S. 14:95.1.
On June 29, 2012, defendant filed a motion to sever. On October 24, 2013, the trial court held a hearing regarding the motion to sever and, over defendant’s objection, denied his motion.
On August 21, 2014, defendant pled guilty to violating La. R.S. 14:95.1 by being a convicted felon in possession of a firearm on May 2, 2011.[1] The State of Louisiana Uniform Commitment Order for that guilty plea shows that defendant was sentenced to 13 years at hard labor without the benefit of parole, probation, or suspension of sentence.
On April 27, 2015, trial of defendant on the charge of second degree murder began. After two days of testimony and evidence, the jury found defendant guilty of the responsive verdict of manslaughter. On June 11, 2015, the trial court sentenced defendant to 40 years imprisonment at hard labor to be served concurrently with his sentence for violating La. R.S. 14:95.1.
Ón June 11, 2015, the State also filed a multiple offender bill of information alleging that defendant was a second felony offender, having been previously convicted of possession with intent' to distribute cocaine. Defendant was advised of his multiple offender rights and stipulated to the multiple bill. The trial court [{.accepted the stipulation and vacated defendant’s sentence for his underlying conviction of manslaughter. The trial court then resentenced defendant to 50 years imprisonment at hard labor without the benefit of probation or suspension of sentence.[2] This appeal follows, • ■
Facts
In the early morning hours of May 2, 2011, Randy Thornton was shot and killed near 1144 Clydesbank Drive in Harvey in Jefferson Parish. 9-1-1 callers that reported the shooting stated that the victim was shot by a black male, between 5' 6" to 5' 9", wearing a white shirt. The callers also reported that the suspect ran northbound on “Clydesbank” to the “[Westbank] expressway.”
After Mr. Thornton was found, Zimbary Brown, an eyewitness to the incident,[3] re *1124 ported that he and the victim were burglarizing a truck parked in the back of the apartment complex at “Glasgow and Cly-desbank” when someone called out from a nearby breezeway to ask their identity. ■Mr. Brown became nervous and walked away, but the victim confronted the man in the breezeway. When Mr. Brown heard gunfire, he ran around the complex towards Clydesbank and met up with the victim, who collapsed.
In May of 2011, Davincent Rogers was living in a second floor apartment at the apartment complex at 2216 Glasgow Street. Mr. Rogers testified that, on the night that Randy Thornton was shot, Rogers came home from work at around 10:45 p.m., talked with neighbors for a few minutes, then went inside to change.
IsWhile he was changing, Mr. Rogers heard two or three gunshots, so he immediately turned off the lights and jammed a chair under his front door. Mr. Rogers sat and waited and, when he no longer heard any shots, looked outside. Mr. Rogers stepped out onto his balcony and saw “Le-vell,” who he knew from the neighborhood, walking through the courtyard carrying a “rifle” or “long shotgun.” Mr. Rogers identified defendant-herein as the man that he saw carrying the gun.
Mr. Rogers heard defendant saying, “[a]nd I told him, F, don’t play with me. I told him, F, don’t play with me,” Mr. Rogers indicated that defendant passed him and walked behind the apartment complex where there is a ditch with water. Defendant came back about “seven or eight minutes later” and was not carrying anything. Mr. Rogers saw defendant go through a hole in the fence of the apartment complex and get into a waiting car that sped away.
Detective Travis Eserman, who headed this investigation for JPSO, indicated that officers canvased the area but never located a rifle. They did find three .22-caliber shell casings in the courtyard of the apartment complex at 2216 Glasgow Street and a truck that had been burglarized in the rear parking lot of that same complex.
Detective Eserman stated that Jose Za-vala was the owner of the truck that had been burglarized. Detective Eserman testified that search warrants were executed at two apartments in the complex: that of Mr. Zavala and that of Manuel Pastor. Detective Eserman testified, in Mr. Zavala’s apartment, a box of .25-caliber ammunition was found but they were different from the .22-caliber casings found at the scene. Detective Eserman also stated that the search of the apartments yielded neither drugs nor paraphernalia in either apartment. Detective Eserman stated there was nothing to corroborate that the Hispanic men were involved except that Mr. Zavala owned the truck that was burglarized.
|4Manuel Pastor,[4] who also lived in an apartment at 2216 Glasgow, had seen de *1125 fendant at this apartment complex. Mr. Pastor has never spoken to defendant and did not know defendant’s name. However, he had heard defendant speaking with friends in the parking lot of the apartment complex and knew his voice. Mr. Pastor stated that the way defendant talks “[i]t’s like funny.” He said, “[h]e doesn’t have a very strong voice.”
Mr. Pastor stated at around 11:45 or midnight on the night of the murder, he was in his apartment on the second story when he heard defendant downstairs talking to another person whose voice Mr. Pastor did not recognize. He testified that the two people talked for about fifteen minutes.
Based on this information, Detective Es-erman obtained an arrest warrant for defendant. On May 17, 2011, the United States Marshals located and arrested defendant at another apartment complex in Harvey. Subsequently, Sergeant Stephen Sadowski obtained and executed a search warrant at the address where defendant was arrested. During the search, he located a cell phone and a 9-mm Ruger handgun.
On May 17, 2011, when defendant was arrested, Deputy Brett Beavers informed defendant of his rights and completed the rights of arrestee form with him. That day, defendant stated that he was at his grandmother’s house at 5051 Lyons Court in Marrero on May 2, 2011. Defendant also denied that the phone recovered when he was arrested was his phone.
Detective Eserman testified that, despite defendant’s denial, Eserman subpoenaed the records for (504) 222-5541. Carla Williams, the mother of defendant’s children, confirmed that defendant’s phone number was (504) 222^5541. She denied that defendant was with her. on May 2, 2011 because she had her mother at her house and defendant avoids her mother.
Further, Detective Eserman manually examined defendant’s phone and found a text message received on May 17, 2011 from “Gunna,” which read, “Say dunn wear that rifle at”[sic], A witness identified “Gunna” as Darryl Thomas, who is defendant’s best friend.
Detective Eserman testified that the subpoenaed records. from defendant’s phone reflected that he had called several people around the time of the murder. Specifically, defendant had called one number six times within three hours of the homicide. Detective Eserman testified that he requested records from that number and discovered that it belonged to Rayvan Redmon.
Mr. Redmon testified that, in May of 2011, he lived in an apartment at 2216 Glasgow and his phone number was (504) 472-7887. He was at home on the night of the shooting in question and he spoke to police a few months after the shooting.
Mr. Redmon testified that defendant, who he knew from elementary school, had called him between 12:50 and 1:00 a.m. “on that morning.” Mr. Redmon knew it was defendant because he recognized his voice and his name “popped up” on Caller ID. Mr, Redmon stated that he and defendant were not friends, and it was unusual that defendant would call him “out of the blue.”
Mr. Redmon stated that, when defendant called, defendant asked if Mr. Red-mon heard sirens, which Mr. Redmon denied. After a few minutes, defendant called again and asked the same question. Mr. *1126 Redmon again told defendant that he did not hear sirens.
Later, Mr. Redmon told the police that defendant sounded “a little frantic” when he called. Mr, Redmon testified that he did not hear gunshots.that night, but did hear “pops.” Mr. .Redmon said that the calls from defendant came after he heard the “pops,” .
| nAgent William Williams of the FBI was accepted as an expert in historical cell site analysis. Agent Williams testified that, on May 2, 2011 between 12:10 a.m. to 1:05 a.m., defendant’s phone made four calls: three calls, which occurred at 12:10, 12:51, and 12:55, used Sector 2 of Tower 23; and one call at 12:53, which used Sector 1 of Tower 90. Agent Williams further testified that the location of the spent casings (2216 Glasgow) and the location of the victim’s body (1144 Olydesbank) were both within the area covered by Sector 2 of Tower 23. Agent Williams specifically testified that it was “very unlikely” that defendant’s cell phone would have utilized Sector 2 of.Tower 23 if the phone was used at his grandmother’s house at 5051 Lyons Court.
Jene Rauch of the Jefferson Parish Sheriffs Office Crime Lab was accepted as an expert in firearms and tool mark identification. Ms. Rauch testified that the three casings recovered from the scene were “.22-long rifle caliber,” which were fired from the same weapon. Ms. Rauch noted that the two projectiles recovered from the victim during the autopsy were consistent with ,22-caliber ammunition like the casings found on the scene, and the projectiles were both fired from the same weapon. Ms. Rauch could not confirm that the projectiles recovered during the victim’s autopsy were shot from the same firearm as the casings found on the scene because a weapon was never recovered for her to make a comparison.
Ms. Rauch testified that a rifle or a pistol could fire .22-caliber ammunition, which is a small caliber. She stated that such a small caliber of ammunition is usually very quiet when fired.
Ms. Rauch testified that the .25-caliber ammunition found in Mr. Zavala’s apartment was not consistent with the casings found on the scene. Further, Ms. Rauch confirmed that the Ruger seized when defendant was arrested was not the firearm used in the crimes that occurred on May 2, 2011.
^Additionally, on the last day of trial, the trial court took judicial notice that defendant had previously admitted to possessing a firearm on May 2, 2011.[5] Based on the testimony and evidence, the jury found defendant guilty of the responsive verdict of manslaughter.
Law and Argument
On appeal, defendant raises two counseled and two pro se assignments of error: first, the trial court’s denial of his Motion to Sever the felon in possession of a firearm count from the count for second degree murder denied him the right to a fair trial; second, the trial court’s taking of “judicial notice” of the fact that defendant admitted to possessing a firearm on May 2, 2011. was an “improper comment on the evidence;” third, the trial court erred in failing to give appropriate judicial notice and use of intent of other crimes evidence; and fourth, his guilty plea was unconstitutional.
In his first assignment of error, defendant argues that the trial court erred in refusing to sever the two counts of the *1127 indictment, which essentially forced him to plead guilty to the felon in possession of a firearm count in order to avoid prejudice at trial for the second degree murder count, denying him due process. Defendant asserts that all parties agreed that the gun he was alleged to be in possession of in the indictment was hot the murder weapon, and the denial of the motion to sever unfairly impinged on "defendant’s fundamental right to a fair trial with the presumption of innocence. The State asserts that defendant’s contentions are moot since he pled guilty to the charge of possession of a firearm by a convicted felon. The State further contends that even if the matter is not' moot, the trial court did not err in refusing to sever the charges.
La. C.Cr.P. art. 493 provides:
IsTwo or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged,- whether felonies - or misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial.
,In the present matter, the indictment reflects that defendant was charged with both (1) second degree murder and (2) possession of a firearm by a convicted felon for events that occurred oh May 2, 2011. Thus, the two offenses charged in the indictment occurred on the same date. Further, the State offered evidence at trial that the victim was killed as a result, of gunshot wounds. Therefore, the murder and the possession of the gun were based on the same transaction as required by La. C.Cr.P. art. 493. Additionally, because the offenses are necessarily punishable, by hard labor, they are triable by the same mode of trial before a twelve-person jury. Thus, we find no error- with the two offenses being tried in the same proceeding
La. C.Cr.P. art. 495.1 provides that: “if it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of information or by- such joinder for trial- together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires.” (emphasis added). In ruling on a motion to sever, the trial court must weigh the possibility of prejudice versus the important considerations of judicial economy and administration. State v. Davis, 12-512 (La.App. 5 Cir. 4/24/13), 115 So.3d 68, 84, writ denied, 13-1205 (La. 11/22/13), 126 So.3d 479. Specifically, the trial court must consider the following factors: whether the jury would be confused by the various counts, whether the jury would be able to segregate the various charges and evidence; whether the defendant would be confounded in presenting his various defenses, whether the crimes charged would be used by the jury to infer a criminal disposition, and whether, considering the nature of the charges, the |acharging of several crimes would make the jury hostile. State v. Welch, 03-905, p. 5 (La.App. 5 Cir. 11/25/03), 864 So.2d 204, 207-08, writ denied, 04-0171 (La. 2/4/05), 893 So.2d 88.
A defendant alleging' á prejudicial joinder of offenses has a heavy burden of proof. Motions to sever under La. C.Cr.P. art. 495.1 are within the sound discretion of the trial court, and its ruling will not be disturbed on appeal absent an abuse of discretion. Davis, supra; State v. Parent, 02-835 (La.App. 5 Cir. 12/30/02), 836 So.2d 494, 506, writ denied, 03-491 (La. 10/31/03), 857 So.2d 472. Factual, rather than conclusory, allegations are required when a defendant alleges prejudicial joinder of offenses on a motion to *1128 sever. State v. Fontenberry, 09-127 (La. App. 5 Cir. 10/27/09), 27 So.3d 904, 910, writ denied, 00-2665 (La. 5/28/10), 86 So.3d 246.
In Fontenberry, the defendant asserted that his five burglary charges should have been severed. The defendant ultimately pled guilty on all five counts and appealed, seeking this Court’s review of the trial court’s denial of his motion to sever. This Court opined that, in light of his guilty plea, the defendant Tailed to specify how he was prejudiced by the denial of the motion to sever. This' Court found that, even if. it was assumed that the severance was granted and defendant would have gone to trial on each count separately, defendant has failed to establish prejudice. Id. The Fontenberry court determined that the trial court did not err in denying the motion to sever because the offenses shared enough similarities to make joinder permissible while the facts of each offense were not identical and were easily distinguishable from each other.
In this case, we find that the trial court did not abuse its discretion in denying defendant’s motion to sever the offenses. The indictment reflects that the murder and the possession of the firearm occurred on the same date, and the offenses were similar in character or based on the same transaction. Further, the |infacts of each offense appear sufficiently distinguishable so as to. avoid confusion. Therefore, the trial court did not abuse its discretion in denying defendant’s motion to sever.
Further, although defendant asserts that he felt forced to plead guilty after the trial court’s denial of the motion to sever, he' does not specifically assert that he would have gone to trial separately. In fact, he concedes that the trial on count two would have been rendered unnecessary in the event that he received a life sentence on count one. Therefore, as in Fontenberry, we find, even assuming that defendant would have proceeded to separate trials on each count, defendant has failed to show prejudice. See Fontenberry, swpra. This assignment -of error lacks merit. ■
In his second assignment of error, defendant asserts that the trial court’s taking of judicial notice that he admitted to possessing a firearm on May 2, 2011 was an unlawful and improper comment on the evidence, which deprived defendant of due process and his right to a fair trial. Defendant also contends that the jury instruction regarding the trial court’s judicial notice was also in error. The State asserts that the trial court properly noticed a prior admission by defendant in the same proceedings.
La. C.E. art. 201 provides:
A. Scope of Article. — This Article governs only judicial notice of adjudicative facts. An “adjudicative fact” is a fact normally determined by the trier of fact.
B. Kinds of facts. — A judicially noticed fact must be one not subject to reasonable dispute in that it is either.
(1) Generally known within the territorial jurisdiction of the trial court; or
(2) Capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.
C. When discretionary. — A court may take judicial notice, whether requested or not.
|nD. When mandatory. — A court shall take judicial notice upon request if supplied with the information necessary for the court to determine that there is no reasonable dispute as to the fact.
E. Opportunity to be heard. — A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of *1129 the matter noticed. In the absence of prior opportunity to be heard, the request may be made after judicial notice has been taken..
F. Time of taking notice. — A party may request judicial notice at any stage of the proceeding but shall not do so in the hearing of a jury. Before taking judicial notice of a matter in its instructions to the jury, the court shall inform the parties before closing arguments begin.
G. Instructing jury. — In a civil case, the court shall instruct the jury to accept as conclusive any fact judicially noticed. In a criminal case, the court shall instruct the jury that it may, but is not required to, accept as conclusive any fact judicially noticed. (Emphasis added).
Here, defendant admitted in his guilty plea to possessing a firearm on May 2, 2011, the date of the murder in question. The State requested that the trial court take judicial notice of this fact and the trial court expressed the following to the jury:
[T]he Court was asked, to take judicial notice of a particular fact, and that occurs essentially when there are facts that have been established as such that the Court can take what is called judicial notice of a particular fact.
And in this — in this particular case, the Court has taken judicial notice of the fact that the defendant, Levell Johnson, previously admitted to possessing a firearm on May the 2nd of 2011.
That judicial notice is something that you can now take and accept as a fact, you can take it as proven, or it is within your purview as jurors to completely disregard it, quite candidly. It is up to you. You are the sole triers of fact in this case. That judicial notice has been taken by the Court of that fact and, again, you are free to either accept that or to reject it how you see fit, okay?
Defendant argues that the trial court’s judicial notice and jury charge were improper comments on the evidence under La. C.Cr.P. arts. 772 and 806. La. C.Cr.P. art. 772 provides, “[t]he judge in the presence of the jury shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to 112what has been proved, not proved, or refuted.” The supreme court has held that it is the duty of the trial judge to abstain from any expression of opinion or comment on facts or evidence in a criminal jury trial. State v. Williams, 375 So.2d 1379, 1380 (La. 1979). To constitute reversible error, the effect of improper comments must be such as to have influenced the jury and contributed to the verdict. State v. Johnson, 438 So.2d 1091, 1102 (La. 1983).
First, we note that defendant’s arguments focus on the revolver that was seized subsequent to his arrest. However, the State, at trial, made clear that the bill of information and consequent guilty plea referred to the firearm in defendant’s possession on May 2, 2011.
Further, we reiterate that a trial court may take judicial notice of its official minutes. State ex rel. C.M., 13-128 (La.App. 5 Cir. 10/30/13), 128 So.3d 1118, 1127; State v. Batiste, 96-0526 (La.App. 3 Cir. 12/11/96), 687 So.2d 499, 503, writ denied, 97-174 (La. 6/30/97), 696 So.2d 1003. Here, the trial judge took notice of facts in evidence from its earlier proceeding in the same district court proceeding. This was not an improper comment on the evidence.
Next, defendant alleges that the trial court erred in charging the jury on judicial notice. La. C.Cr.P. art. 806 provides:
The court shall not charge the jury concerning the facts of the case and shall not comment upon the facts of the case, either by commenting upon or recapitu *1130 lating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted.
In the present matter, the trial court read the following statement during the jury charges:
I have taken “judicial notice” of certain facts. That means that I accepted the existence of certain facts because they were known and not subject to reasonable dispute.
Specifically, I have taken judicial notice of the fact that the defendant Levell Johnson previously admitted to being in possession of a firearm on May 2, 2011. 11sYou may, but are not required to, accept as conclusive any fact.that I have judicially noticed.
First, defense counsel did not object to this jury charge. La. C.Cr.P. art. 841 provides, “[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence.” Second, the supreme court has specifically held, “[a]n alleged error in the jury instruction is not preserved for appeal in the absence of a contemporaneous objection.” State v. Haarala, 398 So.2d 1093, 1098 (La. 1981). Therefore, we find that this argument regarding the jury charges was not properly preserved for appeal and is not before this Court.
In his third assignment of error, which is filed pro se, defendant contends that the trial court erred when it “informed the trier of fact [that he possessed a firearm] in.its jury charges without him taking the witness stand.” As noted above, this issue was not properly preserved for appeal and is not before this Court. La. C.Cr.P. art. 841; Haarala, supra.
In this same assignment of error, defendant contends that the prosecutor perjured himself when referring to the weapon in question and defendant’s guilty plea but does not offer a reference to the record to support his contention. Further, our reading of the record reveals that the prosecutor stated that the bill of information that charged defendant, with possession of a firearm by a convicted felon, listed the offense date as May 2, 2011. The prosecutor clearly stated this information to the trial court and there is no support in the record for another explanation. This assignment of error lacks merit.
In his final pro se assignment of error, defendant challenges the indictment and his guilty plea, to possession of a firearm by a convicted felon. That matter is, however, not properly before this Court. As noted previously, on August 21, 2014, defendant pled guilty to being a felon in possession of a firearm on May 2, 2011, in violation of La. R.S. 14:95.1. La. C.Cr.P. art. 914 provides:
|UA. A motion for an appeal may be made, orally in open, court or by filing a written motion with the clerk. The motion shall be entered in the minutes of the court.
B. The motion for an appeal must be made no later than:
(1) Thirty days after the rendition of the judgment or ruling from which the appeal is taken.
(2) Thirty days from the ruling on a motion to reconsider sentence filed pursuant to Article 881.1, should such a motion be filed.
Our review of the official record does not reflect that defendant appealed this guilty plea. When a defendant fails to make a motion for appeal within the time provided in Article 914, he loses his right to obtain an appeal. State v. Martin, 12-74 (La.App. 5 Cir. 9/25/12), 101 So.3d 1004, 1005 (citing State v. Gray, 04-1272, p. 3 (La.App. 5 Cir. 4/26/05), 902 So.2d 1060, *1131 1061). Upon expiration of the thirty-day period, the eonvietion and sentence are final. State v. Frank, 05-0232 (La.App. 3 Cir. 3/09/05), 898 So.2d 614, 615.
Where, as here, more than thirty days has passed and a defendant has failed to timely file a motion for appeal, his only recourse is to seek reinstatement of his right to appeal in the trial court. State v. Counterman, 475 So.2d 336 (La. 1985). The appropriate procedural vehicle for a defendant to seek the exercise of his right to appeal, after the delay provided in La. C.Cr.P. art. 914 has expired, is a timely-filed application for post-conviction relief filed pursuant to State v. Counterman, supra. As the matter is not properly before this Court, this assignment is preter-mitted.
Errors Patent
As is our practice, the record was reviewed for errors patent, according to La. C.Cr.P. art. 920. We found that the commitment minute entry and the uniform commitment order are inconsistent with the transcript.
First, the minute entry of the commitment and the uniform commitment order state that defendant is to serve his enhanced sentence without parole, | ^probation, or suspension of sentence. The sentencing transcript, however, reflects that defendant’s enhanced sentence is to be served without benefit of probation or suspension of sentence; the trial judge did not restrict parole for defendant’s enhanced sentence.
According to State v. Lynch, 441 So.2d 732, 734 (La. 1983), if “there is a discrepancy between the minutes and the transcript, the transcript must prevail.” This Court has previously remanded a case for correction of the uniform commitment order in its error patent review. State v. Long, 12-184, pp. 10-11 (La.App. 5 Cir. 12/11/12), 106 So.3d 1136, 1142).
Further, the trial judge correctly placed no restriction on parole because La. R.S. 14:31 does not authorize a restriction on parole. See La. R.S. 15:529.1(G); see also State v. Bruins, 407 So.2d 685 (La. 1981) (where the supreme court determined that the conditions imposed on the sentence are those which the underlying offense calls for).
Accordingly, we remand this matter and order that the commitment and the uniform commitment order be corrected to reflect the proper sentence handed down by the court without a restriction on the benefit of parole. Further, the Clerk of Court for the 24th Judicial District Court is directed to transmit the original of the corrected commitment and uniform commitment order to the officer in charge of the institution to which defendant has been sentenced and the Department of Corrections’ legal department. See Long, at 1142, (citing La. C.Cr.P. art. 892(B)(2)).
AFFIRMED; REMANDED FOR CORRECTION OF COMMITMENT

.According to the State, the weapon referenced in this charge' is the weapon used to shoot Randy Thornton on May 2, 2011, Defendant’s guilty plea to this charge is not before this Court on appeal. See discussion of this issue in defendant's fourth assignment of error, infra.

. See Error Patent Discussion regarding the inconsistency between the transcript and commitment. .

. Additionally, Mr. Brown gave police three recorded statements, which contained various inconsistencies about the shooter’s description. In the statement on the scene, Mr. Brown alleged that the shooter was a black *1124 male. In his first recorded statement on May 2, 2011, at 5:55 a.m., Mr. Brown stated that he could not determine whether the suspect was black or white. In his second recorded statement on May 2, 2011, at 2:40 p.m., Mr. Brown named Manuel Pastor as the shooter. Detective Eserman stated that Mr. Brown indicated that the victim, Randy Thornton, was selling drugs to the “Mexican inhabitants of the complex.” In his third recorded statement on May 3, 2011, at 11:55 a.m., Mr. Brown recanted his statement implicating Mr. Pastor. Further, at trial, Detective Eserman indicated that Mr. Brown had made another unrecorded statement where he admitted to being a paranoid schizophrenic. Detective Eserman also advised that Mr. Brown had indicated that he could talk to dead people, and with this ability, he would talk to the victim to find out who shot him. Detective Eserman testified that when he discovered this, he considered Mr. Brown an unreliable witness and stopped questioning him.

. In a recorded statement that was made in court before he was deported, Mr. Pastor stat *1125 ed that he had seen the victim stealing some things the week before the murder. Mr. Pastor stated that he did not see the victim on the night of the murder, and he did not see him stealing anything on that night.

. Again, it is noted that the firearm at issue in the bill of information was the firearm used during the homicide on May 2, 2011.